UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ERIC DODGE, an individual,<br><br>    Plaintiff,<br><br>    vs.<br><br>EVERGREEN SCHOOL DISTRICT NO. 114, a public corporation; CAROLINE GARRETT, an individual; and JANAE GOMES, an individual,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT**<br><br>Jury Trial Requested |

Plaintiff Eric Dodge alleges as follows:

**INTRODUCTION**

1. As recognized by the Supreme Court of the United States: "Speech by citizens on matters of public concern lies at the heart of the First Amendment, which was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Lane v. Franks*, 573 U.S. 228, 235 (2014) (internal quotation omitted).

2. This constitutional right to freedom of speech also protects individuals who are employed by governmental entities: "public employees *do not renounce their citizenship* when they accept employment, and this Court has cautioned time and again that public employers may not condition employment on the relinquishment of constitutional rights." *Id.* (italics added).

Page 1 – **COMPLAINT** {00840426; 1}

Thus, when not performing work in their official capacity, such employees remain private citizens and are free to have their own interests, beliefs, and opinions—including on matters of politics—without being punished for them by their public employers and supervisors.

3. Plaintiff Eric Dodge was a long-standing and respected teacher employed by a public school district in Vancouver, Washington, who was returning to start new duties in a different middle school following an extended absence to rehabilitate from a stroke, from which he had finally recovered.

4. On his second day back to work, and before students had even returned, Dodge was verbally attacked and defamed by his new principal for the political opinions he held as a private citizen—specifically, statements in support of President Trump—which caused not only emotional devastation to plaintiff but also a recurrence of the debilitating stroke symptoms from which he had previously recovered. These emotional and physical injuries have caused plaintiff to be unable to continue his livelihood by working as a teacher.

5. Seeking redress, plaintiff filed a complaint about the principal's discrimination and retaliation with the school district's human resources department, but the HR director worked closely with the principal behind the scenes to ensure that a predetermined outcome of "unsubstantiated" was achieved. As part of these efforts, the HR director hired an outside investigator to look into plaintiff's complaint, but when that investigator returned numerous findings that were supportive of plaintiff and critical of the principal, the HR director refused to share any of this information with plaintiff. Instead, the HR director wrote her own report to provide to plaintiff, in which she misstated and misrepresented the investigator's actual findings in order to close the investigation as unsubstantiated.

6. Plaintiff then appealed HR's determination to the school district's elected board members, who declined to take any corrective action. Notably, the school district refused to give plaintiff a copy of the investigator's full report until weeks after the appeal was already over.

7. In engaging in such conduct, defendants have violated plaintiff's constitutional and other legal rights, causing substantial injury and damage to plaintiff, as set forth below:

**PARTIES**

8. Plaintiff Eric Dodge is a resident of Clark County, Washington.

9. Defendant Evergreen School District No. 114 ("Evergreen" herein) is a public-school district and local government entity located in and doing business in Vancouver, Clark County, in the State of Washington.

10. During all relevant times, defendant Caroline Garrett was employed as the Principal of Wy'East Middle School ("Wy'East" herein), one of Evergreen's schools in Vancouver. Garrett is being sued in her individual capacity.

11. During all relevant times, defendant Janae Gomes has been employed as the Chief Human Resources Officer for Evergreen. Gomes is being sued in her individual capacity.

**JURISDICTION AND VENUE**

12. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1367, and has personal jurisdiction over each defendant.

13. All facts, events, and transactions giving rise to this lawsuit occurred within the geographic environs of the Western District of Washington; thus, venue is proper in this Court pursuant to 28 U.S.C. §1391.

14. All facts, events, and transactions giving rise to this lawsuit occurred within Clark County; thus, assignment is proper in the Tacoma courthouse pursuant to LR 3(d)(1).

15. Plaintiff provided 60 days advance written notice of all state law claims to Evergreen pursuant to RCW 4.96.020.

**FACTUAL ALLEGATIONS**

16. Plaintiff has been involved with Evergreen for most of his life, first as a student and then as an employee for over 17 years.

17. Over these years, plaintiff developed a reputation for being an excellent teacher and coach, known for his genuine concern for the well-being of his students and for the respect and cooperation he has shown toward his colleagues.

18. On October 23, 2017, while working at Evergreen's Mountain View High School, plaintiff unexpectedly suffered a stroke, which caused numerous symptoms including loss of strength, loss of coordination, and a verbal stutter.

19. Plaintiff took a leave of absence for the remainder of the 2017/2018 schoolyear, focusing on extensive rehab and therapy in an effort to reach full recovery.

20. During the 2018/2019 schoolyear, plaintiff continued with his rehab and returned to work at Evergreen on a part-time basis as a substitute teacher. By the end of the schoolyear, plaintiff's stroke-related symptoms had essentially resolved, and he and his physician agreed he was ready to return to classroom work on a full-time basis.

21. Because his former position at Mountain View High School was no longer open, Evergreen assigned plaintiff to teach Science at Wy'East for the 2019/2020 schoolyear. Plaintiff was very happy about the prospect of returning to full-time duty as a teacher.

22. Outside of work, plaintiff has had many activities and interests. In addition to being a husband and father, plaintiff has enjoyed reading about and discussing the news and politics as an informed citizen. He has particularly enjoyed friendly debate and open exchange of ideas among people with different backgrounds and perspectives.

23. Plaintiff identifies himself as politically "independent" but leaning Republican. He did not vote for Donald Trump in 2016 out of concerns about Trump's character, but as time passed with Trump serving as President, plaintiff approved of the job he was doing and so began to be supportive of him.

24. Early in the summer of 2019, plaintiff saw a red "Make America Great Again" hat ("MAGA hat" herein) for sale with an internal tag that said: "Made in China". Plaintiff

Page 4 – **COMPLAINT** {00840426; 1}

purchased the hat both because he supported Trump but also because he found it ironic and humorous that the hat had been made in China.

25. During the summer holidays in 2019, plaintiff would at times wear the MAGA hat while at gatherings or out in the public. He liked to wear the hat as a conversation-starter, with the idea of explaining that ordinary and normal people support Trump, despite some of Trump's flaws (as symbolized by the "Made in China" tag in the hat).

26. He would also wear the MAGA hat when he was going to be outside on a sunny day to protect the sun spots on his head from developing skin cancer, as he had been cautioned to do by his physician in the summer of 2019 after the sun spots had been bleeding. At that time, the MAGA hat was the only hat owned by plaintiff.

27. Plaintiff's first day of work at Wy'East was on August 22, 2019, which was the start of a week planned for teacher training and preparation, with no students present.

28. It was a sunny day, and so plaintiff was wearing his MAGA hat while walking from his vehicle to the entrance of Wy'East. When he arrived at the front door, he doffed the MAGA hat, and he did not subsequently wear or purposefully display it while inside Wy'East.

29. After completion of a training session, plaintiff was approached in his classroom by his new principal, defendant Garrett, with whom he had not previously worked.

30. Unbeknownst to plaintiff at the time, Garrett had a prior history at Wy'East of aggressively promoting political ideology and messages within the school, both in her official and personal capacities, and in creating a fearful and hostile environment with certain staff members, including creating a double standard for staff whose political views differed from her own.

31. During this first meeting, Garrett voiced her concerns about plaintiff's MAGA hat. Plaintiff assured Garrett that he was not trying to offend anyone with the hat. Garrett concluded by stating she wouldn't say he couldn't wear the hat, but that she would advise him to

"use his better judgment", which was a veiled way of stating he should not wear the hat. Given that plaintiff had never worn the MAGA hat inside of Wy'East, plaintiff reasonably understood Garrett's concerns to be directed at the fact that he owned the hat at all and/or that he might wear it on his personal time.

32. The next morning, August 23, 2019, when plaintiff arrived at Wy'East for more training and preparation, he left his MAGA hat in his car, not wanting to cause any friction with Garrett and hoping to succeed at Wy'East.

33. Around mid-day, plaintiff left Wy'East to attend a training session at a different Evergreen location. Given that Garrett was not present at that off-site location, plaintiff wore the MAGA hat in that off-site parking lot while walking to and from his vehicle to the front door, but plaintiff did not wear it or purposefully display it while inside the building. When plaintiff returned to Wy'East that same afternoon, plaintiff again left the MAGA hat in his car and did not wear it or display it at or around Wy'East.

34. At no other point did plaintiff wear or bring the MAGA hat with him while on Evergreen properties. Notably, in a subsequent investigation, Evergreen concluded that plaintiff had never violated any Evergreen policy or rule in wearing the MAGA hat at any time.

35. Back at Wy'East that same afternoon, Garrett approached and cornered plaintiff with an aggressive and hostile tone. She began the conversation by exclaiming: "OK, what is the fucking deal with you and your hat!"

36. Plaintiff was caught off-guard and by surprise, as the MAGA hat was in his car and had not been in the building, and as her tone was dramatically different from the day before.

37. For the next 15 minutes, Garrett—acting under color of state law, and acting as plaintiff's new boss—repeatedly and aggressively berated plaintiff. Among other things, she declared that plaintiff was a "racist", "bigot", "homophobe", "liar", and "hateful person". Plaintiff felt threatened, insulted and bullied, simply because he owned a hat of which Garrett

disapproved.

38. Garrett concluded her verbal assault by telling plaintiff to get union representation because he "would need it" the next time they talked, thereby threatening discipline to plaintiff based solely on his political beliefs and speech.

39. The effects of Garrett's attack were devastating to plaintiff. In addition to causing severe emotional distress, humiliation, and fear, Garrett's attack caused plaintiff's post-stroke symptoms to recur, wiping out his progress from rehab and immediately bringing back his verbal stutter and an inability to walk in a straight line.

40. As a result of these emotional and physical injuries, plaintiff has been unable to continue teaching for Evergreen and remains on an unpaid leave of absence from employment.

41. Seeking redress, plaintiff filed an internal complaint with Evergreen's Human Resources department, including that Garrett violated Evergreen's policies mandating civility and prohibiting harassment, intimidation, and bullying.

42. This HR complaint was managed by defendant Gomes, who handled the investigation in a biased and unfair manner intended to support and protect Garrett to the detriment of plaintiff.

43. In fact, before plaintiff had even filed his complaint with HR, Gomes had already been communicating and working with Garrett to coordinate a response to the allegations and to ensure that plaintiff would not return to work at Wy'East.

44. Upon information and belief, Gomes and Garrett also conceived a plan to try to prevent plaintiff's HR complaint from being investigated. Specifically, before the HR investigation was completed, Gomes blackmailed plaintiff in an effort to get him to drop his complaint against Garrett. Gomes told plaintiff that there had been a public records request filed related to his complaint (not filed by plaintiff) and threatened that if plaintiff did not immediately drop his complaint, then she would be forced to turn over sensitive and private/personal

information—including protected medical information—about plaintiff to the outside party who had made the records request. Plaintiff rejected the blackmail and advised Gomes to follow applicable laws in responding to any public records requests, including by withholding or redacting any protected information.

45. Gomes also used her position in other ways to try to harm plaintiff and end his employment. For example, in responding to plaintiff's requests for leave, Gomes repeatedly demanded the entirety of plaintiff's medical records from both primary care providers and specialists without any reasonable limitation on the scope of those medical records.

46. With regard to plaintiff's inquiries regarding benefits—which are typically handled by different HR staff members who manage benefits administration—Gomes prohibited any of those staff members from speaking with plaintiff; rather, Gomes insisted that she be the sole person to communicate with plaintiff going forward. Gomes then placed a series of roadblocks in front of every effort by plaintiff to obtain various benefits to which he was entitled.

47. When plaintiff refused to drop his HR complaint against Garrett, Gomes advised plaintiff that Evergreen was hiring an "independent investigator" to look into the allegations. However, when the investigation was completed, Gomes refused to share the investigator's report or findings to plaintiff.

48. Instead, on October 1, 2019, Gomes sent to plaintiff only her own written summary report of the investigator's findings, which concluded that "an act of discrimination, harassment, intimidation and bullying [by Garrett] *did not occur*" and therefore closed plaintiff's HR complaint as unsubstantiated. (Italics added.) Gomes's report went on to assert that, in fact, the "preponderance of the evidence" showed that *plaintiff* was the one who made others uncomfortable (even though no HR complaint had been made or investigated against plaintiff).

49. Plaintiff subsequently met with Gomes and asked her again to share the investigator's reports and reconsider her decision, but Gomes rejected all of these requests. As a

result, on October 30, 2019, pursuant to Evergreen's policies, plaintiff appealed Gomes's decision to Evergreen's elected board of directors. He also again requested copies of all relevant records, especially the actual records and reports from the "independent investigator".

50. In response, Evergreen scheduled the board's appeal hearing to occur on November 14, 2019—just two weeks out—but stonewalled the records request by providing multiple copies of records that were irrelevant or known to be already in plaintiff's possession, rather than any of the key records requested.

51. On November 14, 2019, plaintiff argued his appeal, but despite being informed about this misconduct by Garrett and Gomes, Evergreen's board refused to take any action to correct it.

52. With regard to the investigator's documents, Evergreen inexplicably waited until November 8, 2019 (*i.e.*, just a few days before the hearing) to provide the investigator's 5-page abridged report and until December 2, 2019 (*i.e.*, long after the hearing) to provide the investigator's full 18-page report, despite the fact that both reports were fully drafted and in Evergreen's possession by September 23, 2019.

53. Moreover, these reports demonstrated that Gomes's summary report from October 1, 2019, had significantly misstated and distorted the actual findings made by the investigator. For example, Gomes's summary report omitted all references to the investigator's findings that were adverse to Garrett and/or Evergreen, such as Garrett's established and well-known history of pushing political statements and symbols in the school and permitting others holding similar political views as her to do so as well, thereby creating a "double standard" among the employees based on their personal political views.

54. Gomes's report further omitted reference to the finding that Garrett had been motivated to confront plaintiff on August 23, 2019 simply because he wore the MAGA hat. According to the investigator, Garrett herself admitted she had told plaintiff that "she did not

want him wearing the hat anymore", whether at Wy'East, or at other schools, or even just "out there in the world" as a representative of her school.

55. In addition, the investigator's report made it clear that Gomes had falsely asserted that plaintiff had violated school district policies by a "preponderance of the evidence" by making others uncomfortable. To the contrary, the investigator explicitly found that plaintiff had *not* violated any of Evergreen's policies, including by wearing the MAGA hat.

56. The investigator further concluded that the plaintiff had "reasonably perceived" Garrett's statements to include "a threat of discipline" for wearing the hat, and that Garrett's conduct toward plaintiff "did have a negative substantial affect [sic] on Mr. Dodge."

## FIRST CLAIM FOR RELIEF

### (Civil Rights; 42 U.S.C. §1983)

### (Against All Defendants)

57. Plaintiff hereby incorporates the allegations in Paragraphs 1 through 56 as if fully set forth here.

58. Defendants are each a "person" under 42 U.S.C. §1983.

59. As set forth above, defendants violated plaintiff's constitutional rights to freedom of speech and due process under the First, Fifth, and Fourteenth Amendments to the United States Constitution.

60. The actions of defendants were willful, intentional, and in reckless disregard of plaintiff's constitutional rights.

61. Plaintiff has consequently suffered injury, harm, and damages.

62. Plaintiff's damages include economic damages, including but not limited to lost wages, lost benefits, loss of future earnings capacity and benefits, and medical expenses; noneconomic damages, including but not limited to mental anguish, distress, humiliation, anxiety, pain and suffering, loss to reputation, embarrassment, and fear; and punitive damages, in

amounts to be proven at trial.

63.   Plaintiff is also entitled to prevailing plaintiff attorneys' fees and costs under 42 U.S.C. §1988 or as otherwise provided by law.

## SECOND CLAIM FOR RELIEF

**(Conspiracy to Violate Civil Rights; 42 U.S.C. §1985)**

**(Against All Defendants)**

64.   Plaintiff hereby incorporates the allegations in Paragraphs 1 through 63 as if fully set forth here.

65.   Defendants concertedly deprived plaintiff of his constitutional rights to freedom of speech and due process, and those concerted acts evidence a conspiracy to deprive plaintiff of equal privileges or immunities under the laws in violation of 42 U.S.C. §1985 (3).

66.   Plaintiff has consequently suffered injury and damages, as set forth above.

## THIRD CLAIM FOR RELIEF

**(Neglect to Prevent Violation of Civil Rights; 42 U.S.C. §1986)**

**(Against All Defendants)**

67.   Plaintiff hereby incorporates the allegations in Paragraphs 1 through 66 as if fully set forth here.

68.   Under 42 U.S.C. §1986, a person who has actual or constructive knowledge of but neglects to prevent acts prohibited by 42 U.S.C. §1985 is liable for damages resulting from the acts.

69.   Each defendant was aware, actually or constructively, of the discriminatory and retaliatory actions of the other defendants or their own employees, had the ability to prevent the actions, and failed to prevent the actions, in violation of 42 U.S.C. §1986.

70.   Plaintiff has consequently suffered injury and damages, as set forth above.

///

## FOURTH CLAIM FOR RELIEF

### (Civil Rights; Washington State Constitution)

### (Against All Defendants)

71. Plaintiff hereby incorporates the allegations in Paragraphs 1 through 70 as if fully set forth here.

72. As set forth above, defendants violated plaintiff's constitutional rights to freedom of speech and due process under Article I, Section 3 and Article I, Section 5 of the Washington State Constitution.

73. The actions of defendants were willful, intentional, and in reckless disregard of plaintiff's constitutional rights.

74. Plaintiff has consequently suffered injury and damages, as set forth above.

## FIFTH CLAIM FOR RELIEF

### (State Civil Service Law Violations; RCW 41.06.250)

### (Against All Defendants)

75. Plaintiff hereby incorporates the allegations in Paragraphs 1 through 74 as if fully set forth here.

76. RCW 41.06.250(2) provides that "[e]mployees of the state or any political subdivision thereof shall have the right to vote and to express their opinions on all political subjects and candidates…."

77. As set forth above, defendants deprived plaintiff of the rights guaranteed to him under RCW 41.06.250 as a public employee.

78. Plaintiff has consequently suffered injury and damages, as set forth above.

## SIXTH CLAIM FOR RELIEF

### (Outrage)

### (Against All Defendants)

79. Plaintiff hereby incorporates the allegations in Paragraphs 1 through 78 as if fully set forth here.

80. As set forth above, defendants engaged in extreme and outrageous conduct directed to plaintiff, which intentionally or recklessly inflicted emotional distress on plaintiff.

81. Plaintiff has consequently suffered severe emotional distress and damages, as set forth above.

## SEVENTH CLAIM FOR RELIEF

### (Defamation)

### (Against Defendant Garrett Only)

82. Plaintiff hereby incorporates the allegations in Paragraphs 1 through 81 as if fully set forth here.

83. Upon information and belief, defendant Garrett made false and defamatory statements about plaintiff to other employees and agents of Evergreen, such as that plaintiff was "racist", "bigoted", or "hateful" for wearing the MAGA hat.

84. The defamatory statements by Garrett were intentional, malicious, and not privileged.

85. The defamatory statements caused actual damage to plaintiff, including harm to his reputation at Evergreen.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Eric Dodge respectfully prays for judgment to be entered granting him relief as follows:

A. Compensatory damages in an amount to be proven at trial;

B. Punitive damages in an amount to be proven at trial;

C. Prejudgment interest on any award of lost wages and lost benefits;

D. Plaintiff's reasonable attorneys' fees and costs under 42 U.S.C. §1988 or as

otherwise provided by law;

E.   A declaration that defendants have committed the above violations of plaintiff's civil rights; and

F.   Such other and further relief as the Court may allow.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all questions so triable.

Dated this 11th day of March, 2020.

LINDSAY HART, LLP

By:   */s/ Michael Estok*
Michael Estok, WSBA No. 36471
1300 SW Fifth Avenue, Suite 3400
Portland, OR 97201
Telephone: 503-226-7677
mestok@lindsayhart.com

McKANNA BISHOP JOFFE, LLP

By:   */s/ Noah Barish*
Noah Barish, WSBA No. 52077
1635 NW Johnson Street
Portland, OR 97209
Telephone: 503-821-0960
nbarish@mbjlaw.com

*Attorneys for Plaintiff Eric Dodge*