HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ERIC DODGE, an individual,

    Plaintiff,

    vs.

EVERGREEN SCHOOL DISTRICT NO. 114,
a public corporation; CAROLINE GARRETT,
an individual; and JANAE GOMES, an
individual,

    Defendants.

Case No. 3:20-cv-05224-RBL

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO
DISMISS PURSUANT TO FRCP
12(B)(6)**

ORAL ARGUMENT REQUESTED

Noted on Motion Calendar:
Friday, May 29, 2020
Without Oral Argument

## I.    INTRODUCTION

Contrary to the arguments made by defendants, plaintiff's First Claim (42 U.S.C. §1983), Second Claim (42 U.S.C. §1985), Third Claim (42 U.S.C. §1986), and Fifth Claim (RCW 41.06.250) have all been adequately pled in the Complaint and state valid claims for relief under the relevant federal and Washington authorities. Alternatively, to the extent the court finds any deficiencies with the pleadings, plaintiff requests leave to amend.

With regard to defendants' motion on the Fourth Claim (Washington State Constitution), plaintiff concedes it and agrees to voluntarily dismiss that claim. With regard to the Seventh Claim (Defamation), plaintiff cannot better specify those allegations at this time without having

Page 1 – **PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**
**Case No. 3:20-cv-05224-RBL**

LINDSAY HART, LLP
1300 SW FIFTH AVENUE, SUITE 3400
PORTLAND, OREGON 97201-5640
PHONE: 503-226-7677 FAX: 503-226-7697

1   had the opportunity to conduct discovery, and so plaintiff asks that it be dismissed without

2   prejudice and with leave to re-file.  Lastly, defendants have not moved against the Sixth Claim

3   (Outrage).

4                   II.       SUMMARY OF RELEVANT ALLEGATIONS

5           As set forth in detail in the Complaint, plaintiff Eric Dodge alleges that his public

6   employer (and its agents) unlawfully retaliated and discriminated against him as a result of his

7   protected political speech, political opinions, and/or political support of President Trump.  *See*

8   *generally* Complaint [Dkt. #1].

9           According to the Complaint, defendants first engaged in the following misconduct:

10  Dodge's direct supervisor, Caroline Garrett, initially told Dodge to "use his better judgment" and

11  not engage in such protected activity in the future (¶31); Garrett later verbally assaulted Dodge

12  and used an aggressive tone and profanities regarding his protected activity (¶35); Garrett

13  aggressively berated Dodge with terms like "racist," "bigot", "homophobe", "liar", and "hateful

14  person" as a result of his protected activity (¶37); Garrett threatened discipline to Dodge because

15  of his protected activity (¶38); and Garrett told Dodge "she did not want him wearing the hat

16  anymore", whether at Wy'East school, or at other schools, or even just "out there in the world"

17  as a representative of her school (¶54).

18          Once Dodge filed an internal HR complaint relating to Garrett's misconduct above,

19  defendants then engaged in *further* retaliation and discrimination toward Dodge, including: they

20  threatened and "blackmailed" Dodge that they would leak his medical information and other

21  personal information to outside parties if Dodge did not drop his HR complaint (¶44); they

22  placed a series of inappropriate roadblocks to prevent and delay Dodge form obtaining the

23  various employment benefits to which he was entitled (¶45); they performed a biased and unfair

24  investigation of Dodge's HR complaint to ensure that Garrett's conduct would be upheld/

25  protected and that Dodge's HR complaint would not be substantiated (¶¶42-56); they

26  Page 2 – **PLAINTIFF'S OPPOSITION TO
    DEFENDANTS' MOTION TO DISMISS
    Case No. 3:20-cv-05224-RBL**

LINDSAY HART, LLP
1300 SW FIFTH AVENUE, SUITE 3400
PORTLAND, OREGON 97201-5640
PHONE: 503-226-7677 FAX: 503-226-7697

1   unreasonably refused to share the results of the investigation with Dodge (¶47); they later

2   provided a false and inaccurate summary of the investigator's findings to Dodge (¶¶48 & 53-56);

3   they implied *falsely* to Dodge that the investigator had concluded that *he* had engaged in

4   misconduct with regard to his prior protected activity, opening up Dodge to potential discipline

5   (¶48); and they unreasonably refused to provide important records requested by Dodge until after

6   his final appeal hearing with the school board was over (¶¶49-52).

7       The effects of all of this misconduct, discrimination, and retaliation by defendants have

8   been "devastating" on Dodge, resulting in physical injury and emotional symptoms (¶39).  It has

9   further caused an inability for Dodge to continue working, thereby requiring him to take an

10  unpaid leave of absence caused by defendants' wrongful acts (¶40).

### III.     AUTHORITY AND ARGUMENT

**A.     Defendants' Motion Under FRCP 12(B)(6) Is Untimely.**

13      Defendants filed their Answers by 4/9/20 [*see* Dkts. #12 & 13] and then subsequently

14  filed the present Rule 12(b)(6) motion on 5/1/20.  As such, this motion is untimely under the

15  rules.  *See* Fed. R. Civ. Pro. 12(b) ("A motion asserting any of these defenses must be made

16  before pleading if a responsive pleading is allowed").

**B.     Legal Standard on FRCP 12(C) Motion, Including Permissive Leave to Amend**

18      If this court will consider defendants' arguments as a Rule 12(c) motion on the pleadings,

19  then a few preliminary legal points should be made.  First, aside from defamation, plaintiff's

20  claims are all governed by the "bare requirements of notice pleading under Rule 8(a)".  *Lee v.*

21  *City of Los Angeles*, 250 F.3d 668 (9th Cir 2001) (applying notice pleading standard to §1983

22  claims).  Notice pleading requires only "a short and plain statement of the claim showing that the

23  pleader is entitled to the relief," Fed. R. Civ. P. 8(a)(2), and it is designed only to "give the

24  defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Lee*,

25  250 F.3d at 679 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)).

26

1    Under notice pleading, the complaint "does not need detailed factual allegations"; rather, it only

2    requires factual allegations that are "enough to raise a right to relief above the speculative level",

3    making the claim for relief "plausible on its face". *Bell Atl. Corp. v. Twombly* 550 U.S. 544, 555

4    & 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

5        Second, in analyzing a Rule 12(c) motion, all factual allegations contained in the

6    complaint must be accepted as "true" and construed in the light most favorable to the non-

7    moving party, here, plaintiff. *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1068 (9th Cir. 2020); *see*

8    *also id.* (noting that a Rule 12(c) motion can be granted "only when, taking all the allegations in

9    the pleadings as true, the moving party is entitled to judgment as a matter of law") (internal

10   quotation omitted).  The court must also draw "all reasonable inferences" from the allegations in

11   the complaint in the plaintiff's favor. *Hines v. Youseff*, 914 F.3d 1218, 1227 (9th Cir. 2019).

12       Third, when a complaint can be possibly cured by the addition of new allegations, there is

13   a strong presumption in favor of granting leave to amend the complaint. *See Wilson v. Playtika,*

14   *Ltd.*, 349 F. Supp. 3d 1028, 1040 (W.D. Wash. 2018) ("On a 12(b)(6) motion, 'a district court

15   should grant leave to amend even if no request to amend the pleading was made, unless it

16   determines that the pleading could not possibly be cured by the allegation of other facts'")

17   (quoting *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990));

18   *see also Westech Aerosol Corp. v. 3M Co.*, No. C17-5067-RBL, 2017 U.S. Dist. LEXIS 124485

19   at *8 (W.D. Wash. Aug. 7, 2017) (granting leave to amend where it was "possible" for plaintiff

20   to amend complaint to allege proper venue).

21       In deciding whether to grant leave to amend, the court may consider new facts that were

22   not pled but were raised in the opposition papers. *Orion Tire Corp. v. Goodyear Tire & Rubber*

23   *Co. Inc.*, 268 F.3d 1133, 1137 (9th Cir. 2001).  The court only lacks discretion to deny an

24   amendment where the amendments are futile, would cause undue prejudice, or are sought in bad

25   faith. *Ventress v. Japan Airlines*, 603 F.3d 676, 680 (9th Cir. 2010).

26   

Page 4 – **PLAINTIFF'S OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**
**Case No. 3:20-cv-05224-RBL**

1    **C.      Plaintiff's §1983 Claim Based on Substantive Due Process Is Not Duplicative.**

2            Plaintiff's first claim for relief asserts violations of his civil rights under 42 U.S.C. §1983

3    based on two distinct constitutional protections: freedom of speech (First and Fourteenth

4    Amendments), and substantive due process (Fifth and Fourteenth Amendments).  Defendants

5    first seek to dismiss this claim to the extent it is premised on the latter constitutional provision.

6            Substantive due process "forbids the government from depriving a person of life, liberty,

7    or property in such a way that shocks the conscience or interferes with the rights implicit in the

8    concept of ordered liberty."  *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (internal

9    quotation omitted).   Defendants have *not* argued that plaintiff's Complaint fails to state a

10   coherent or sufficient theory to find a violation of plaintiff's substantive due process rights.

11   Rather, defendants argue only that such a claim would be "duplicative" of plaintiff's First

12   Amendment claim and therefore preempted and improper as a matter of law.

13           Defendants' "duplicative" argument arises from *Graham v. Connor*, 490 U.S. 386, 109 S.

14   Ct. 1865, 104 L. Ed. 2d 443 (1989), a §1983 claim for excessive force by law enforcement

15   officers, where that claim was pursued under both the right against unreasonable searches and

16   seizures (Fourth Amendment) and substantive due process (Fifth Amendment).  *Id.*  Both

17   theories were being tried to a jury, but a dispute then arose on directed verdict as to the correct

18   standard given that the caselaw under the Fourth Amendment *vs.* Fifth Amendment used

19   different legal tests.  *Id.* at 390-91.  On appeal, the Court held that "all" excessive force claims

20   "should be analyzed under the Fourth Amendment and its 'reasonableness' standard," rather than

21   under the more-generic "substantive due process" approach, because the Fourth Amendment

22   provided a more "explicit textual source of constitutional protection against this sort of

23   physically intrusive governmental conduct."  *Id.* at 395.

24           As discussed by the Ninth Circuit, "*Graham* simply requires that if a constitutional claim

25   is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the

26   Page 5 – **PLAINTIFF'S OPPOSITION TO**
     **DEFENDANTS' MOTION TO DISMISS**
     **Case No. 3:20-cv-05224-RBL**

1    claim must be analyzed under the standard appropriate to that specific provision, not under the

2    rubric of substantive due process." *Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851,

3    855 (9th Cir. 2007) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7, 117 S. Ct. 1219, 137

4    L. Ed. 2d 432 (1997)).   Under *Graham*, preemption occurs only when the substantive due

5    process claim "can be vindicated under a different—and more precise—constitutional rubric."

6    *Action Apartment Ass'n v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1025 (9th Cir. 2007).

7            Here, there are at least two reasons why defendants' argument should be rejected. <u>*First*</u>,

8    defendants have overstated *Graham*'s holding: "Not all substantive due process claims will be

9    duplicative" of a "First Amendment retaliation claim". *Addison v. City of Baker City*, 258 F.

10   Supp. 3d 1207, 1235 n.6 (D. Or. 2017); *cf. United States v. James Daniel Good Real Prop.*, 510

11   U.S. 43, 49-50, 114 S. Ct. 492, 126 L. Ed. 2d 490 (1993) ("We have rejected the view that the

12   applicability of one constitutional amendment pre-empts the guarantees of others"); *Soldal v.*

13   *Cook County*, 506 U.S. 56, 70, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992) ("Certain wrongs affect

14   more than a single right and, accordingly, can implicate more than one of the Constitution's

15   commands.  Where such multiple violations are alleged, we are not in the habit of identifying as

16   a preliminary matter the claim's 'dominant' character.  Rather, we examine each constitutional

17   provision in turn.")

18           Thus, courts have allowed substantive due process claims to co-exist with First

19   Amendment claims "when, for example, the alleged conduct is arbitrary and capricious but not

20   retaliatory" or where "the alleged conduct implicates a different interest." *Addison*, 258 F. Supp.

21   3d at 1235 n.6 (collecting cases); *see also Schneider v. County of Sacramento*, No. S-12-2457,

22   2014 U.S. Dist. LEXIS 116809 at *19 (E.D. Cal. Aug. 21, 2014) ("Even if the claims stem from

23   the single 'wrong' of the 2012 FACE, a single 'wrong[]… can implicate more than one of the

24   Constitution's commands.'") (quoting *Soldal*, 506 U.S. at 70).

25           <u>*Second*</u>, defendants' argument is premature.  This case is only at the pleadings stage.

26

Notably, defendants have *not* stipulated or otherwise agreed that plaintiff's allegations of wrongful conduct against them are fully actionable under the First Amendment. If defendants, for example, later argue that some or all of plaintiff's claim is not "covered by" the First Amendment, such arguments would contradict their current position that substantive due process is "duplicative". *See, e.g.*, *City of Sacramento v. Lewis*, 523 U.S. 833, 843, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) (holding that "[s]ubstantive due process analysis is therefore inappropriate in this case only if respondents' claim is 'covered by' the Fourth Amendment", finding "[i]t is not" so covered, and therefore going on to consider the merits of the due process claim).

For this reason, defendants' argument would be better suited to a motion for summary judgment, which is the usual posture in the cases deciding this issue. For example, in *Hufford v. McEnaney*, 249 F.3d 1142, 1151 (9th Cir. 2001), a civil rights claim in the public employment setting, the court *denied* the defendants' motion for summary judgment against the First Amendment claim, holding that the First Amendment "explicitly covers" the plaintiff's retaliation claim against his employer. *Id.* at 1151. Thus, given that the entirety of plaintiff's claim could be tried to the jury under the First Amendment, the plaintiff's substantive due process claim was deemed to be duplicative. *Id.*

Here, defendants' argument that substantive due process is "duplicative" cannot be resolved "as a matter of law" and should not considered until summary judgment or trial.

**D.    Plaintiff's §1983 Claim under the First Amendment Is Valid and Cognizable.**

In their motion, Defendants have not challenged that plaintiff engaged in constitutionally protected activity under the First Amendment or that plaintiff suffered harm from defendants' actions. Rather, defendants' sole objection is that an "adverse employment action" was not pled. As discussed below, this objection misstates the applicable legal standard and should be rejected. Alternatively, to the extent the court finds any deficiencies in the Complaint on this issue, plaintiff requests leave to amend.

LINDSAY HART, LLP
1300 SW FIFTH AVENUE, SUITE 3400
PORTLAND, OREGON 97201-5640
PHONE: 503-226-7677 FAX: 503-226-7697

### 1) *"Adverse Employment Action" Is Not an Element of This Claim.*

In demanding an "adverse employment action", defendants offer cases under Title VII of the Civil Rights Act[1] and California antidiscrimination laws[2] but avoid any meaningful discussion of the seminal on this issue: *Coszalter v. City of Salem*, 320 F.3d 968 (9th Cir. 2003). *Coszalter* was a §1983 claim based on the First Amendment in a public employment setting.

In *Coszalter*, the court *declined* to adopt the "adverse employment action" requirement as it exists in Title VII cases. Instead, the court focused on whether the defendants' actions would have a chilling effect on the employee's freedom of speech: "In a First Amendment retaliation case, an adverse employment action is *an act that is reasonably likely to deter employees from engaging in protected speech.*" *Id.* at 970 (italics added); *see also id.* at 976 (holding on summary judgment that "if plaintiffs in this case can establish that the actions taken by the defendants were reasonably likely to deter them from engaging in protected activity under the First Amendment, they will have established a valid claim under §1983") (quotation omitted); *cf. Barton v. Clancy*, 632 F.3d 9, 29 (1st Cir. 2011) ("For purposes of a First Amendment retaliation claim, even in an employment setting, a plaintiff *need not suffer an 'adverse employment action'* as that term ordinarily is used in the employment discrimination context") (italics added).

In so holding, the Ninth Circuit disapproved of its prior case *Nunez v. City of Los Angeles*, 147 F.3d 867 (9th Cir. 1998)—offered and relied upon by defendants here—to the extent that *Nunez* can be read to create "an exclusive, category-based limitation" on what is actionable or to require some kind of "loss of a valuable governmental benefit or privilege" beyond the deterrence of protected speech. *Coszalter*, 320 F.3d at 975-76.

The court's discussion in *Coszalter* is instructive:

---

[1] *See, e.g.*, Mtn. at p.7 (citing *Hardage v. CBS Broad., Inc.*, 427 F.3d 117 (9th Cir. 2005) (Title VII)).

[2] *See, e.g.*, Mtn. at p.6 (citing *Lewis v. United Parcel Serv., Inc.*, 252 Fed. App'x 806 (9th Cir. 2007) (California FEHA claim).

Page 8 – **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS Case No. 3:20-cv-05224-RBL**

> The precise nature of the retaliation is not critical to the inquiry in First Amendment retaliation cases.  The goal is to prevent, or redress, actions by a government employer that 'chill the exercise of protected' First Amendment rights…. Various kinds of employment actions may have an impermissible chilling effect.  Depending on the circumstances, even minor acts of retaliation can infringe on an employee's First Amendment rights….
>
> To constitute an adverse employment action, a government act of retaliation need not be severe and it need not be of a certain kind.  Nor does it matter whether an act of retaliation is in the form of the removal of a benefit or the imposition of a burden…. [Discussing prior cases.]  Our findings in these cases were not dependent on any characterization of the government action as a denial of a valuable governmental benefit or privilege.  As we stated in *Carpenter*, the relevant inquiry is whether the state had taken 'action designed to retaliate against and chill political expression.'…  Or, as we had earlier stated in *Allen*, the inquiry is whether 'the exercise of the first amendment rights was deterred' by the government employer's actions.

*Id.* at 975 (citations omitted).  In contrast, "when an employer's response includes only minor acts, such as 'bad-mouthing,' that cannot reasonably be expected to deter protected speech, such acts do not violate an employee's First Amendment rights."  *Id.* at 975-76.

The court in *Coszalter* denied summary judgment, finding that a wide variety of acts by the defendant in the record satisfied this standard—even when "*considered individually*"— including acts such as the following:

> the transfer to new duties; an unwarranted disciplinary investigation; an unwanted assignment of blame; a reprimand containing a false accusation; a criminal investigation; repeated and ongoing verbal harassment and humiliation; the circulation of a petition at the encouragement of management; a ten-day suspension from work; a threat of disciplinary action; an unpleasant work assignment; a withholding of customary public recognition; an unwarranted disciplinary action; and two consecutive ninety-day "special" reviews of work quality.

*Id.* at 976-77 (internal citations omitted).

Thus, *Coszalter* establishes that "[d]epending on the circumstances, even minor acts of retaliation can infringe on an employee's First Amendment rights."  *Id.* at 975.  Moreover, when minor acts of retaliation are "taken as part of a more general campaign", each act "might in

LINDSAY HART, LLP
1300 SW FIFTH AVENUE, SUITE 3400
PORTLAND, OREGON 97201-5640
PHONE: 503-226-7677 FAX: 503-226-7697

context have greater materiality than when viewed in isolation." *Thomas v. County of Riverside*, 763 F.3d 1167, 1169 (9th Cir. 2014); *see also, e.g., Allen v. Scribner*, 812 F.2d 426, 434 n.16 (9th Cir. 1987) ("If Allen reasonably felt that office work was less desirable than field work, his reassignment might have had an impermissible chilling effect on his constitutionally protected speech" even if the new tasks "were commensurate with his training and experience"), *modified*, 828 F.2d 1445 (9th Cir. 1987); *Elrod v. Burns*, 427 U.S. 347, 359 n.13, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976) (noting that the conduct used to discourage first amendment freedoms "need not be particularly great in order to find that rights have been violated" and that "rights are infringed both where the government fines a person a penny for being a Republican and where it withholds the grant of a penny for the same reason").

### 2) *Plaintiff's Allegations Satisfy the Ninth Circuit Standard in* Coszalter.

Plaintiff has more than adequately pled a First Amendment claim under *Coszalter*. As set forth in Section II, above, defendants' conduct toward plaintiff included, *inter alia*, a direct command by his supervisor not to engage in constitutionally-protected speech; a threat of discipline; aggressive bullying and verbal attacks from his supervisor; a threat of blackmail if he chose to pursue his HR complaint; false characterizations of defendants' HR investigation that sought to wrongly shift blame to plaintiff; refusal to discipline or censure Garrett for her clear misconduct and violations of school policies; refusal without cause to provide important records to plaintiff to defend himself at the schoolboard appeal, *etc.*

Even if the Title VII "adverse employment action" cases applied (which they do not), the above misconduct would be sufficient to allege and prove a hostile work environment. *See, e.g.*, *Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154, 1161 (9th Cir. 2017) (setting forth elements for the adverse employment action of "hostile work environment" in sexual discrimination claim); *see also Hollis v. City of Buffalo*, 28 F. Supp. 2d 812, 825 (W.D.N.Y. 1998) (applying hostile work environment theory to §1983 equal protection violation). Indeed, the actual impact on

1   plaintiff from this hostile work environment has been "devastating", and has caused him to need

2   to go on unpaid leave rather than being able to continue his job and earn a living (another

3   "adverse employment action").

4       In any event, plaintiff does not need to satisfy the higher Title VII standard.  Rather,

5   plaintiff's allegations only need to support a theory that defendants' conduct was "reasonably

6   likely to deter" plaintiff from engaging in protected activity under the First Amendment, and

7   therefore state a claim for relief under §1983.  This standard has been met.  Moreover, plaintiff

8   has pled that he suffered physical and emotional harm caused by defendants' misconduct.  *See*

9   *Anderson v. Central Point School Dist.*, 746 F.2d 505, 508 (9th Cir. 1984) ("Here, the protected

10  interest is the appellant's first amendment rights, and his damages are the result of a violation of

11  those rights.  As the Court noted in *Carey*, where injury such as mental and emotional distress is

12  caused by the constitutional violation, that injury is compensable under section 1983").

13  Defendants' motion should therefore be denied.

14      3)      *Defendants' Other Arguments Are Summary Judgment Arguments.*

15      If defendants try to argue on reply that any of the alleged misconduct was *not*

16  "reasonably likely to deter" the plaintiff's exercise of his constitutional rights, such an argument

17  fails under the clear examples provided in *Coszalter*, but it is also an argument that is premature

18  at this stage on a motion on the pleadings.

19      Indeed, virtually all cases relied upon in defendants' motion were summary judgment

20  cases.  *See, e.g.*, *Nunez v. City of Los Angeles*, 147 F.3d 867 (9th Cir. 1998) (summary judgment;

21  finding that plaintiff offered no evidence beyond the fact that he was "bad-mouthed and verbally

22  threatened"); *Hellman v. Weisberg*, 360 Fed. Appx. 776 (9th Cir. 2009) (summary judgment;

23  finding that plaintiff received a "snubbing" from "fellow coworkers" that was "mostly social in

24  nature" and did not interfere with her job responsibilities); *Downing v. West Haven Board of Ed.*,

25  162 F. Supp. 2d 19 (D. Conn. 2001) (summary judgment; finding that merely asking the

26

Page 11 – **PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
Case No. 3:20-cv-05224-RBL**

LINDSAY HART, LLP
1300 SW FIFTH AVENUE, SUITE 3400
PORTLAND, OREGON 97201-5640
PHONE: 503-226-7677 FAX: 503-226-7697

1

2

3

4

employee to cover up his "Jesus 2000" shirt—which violated the school dress code policy—while in class was a permissible restraint on speech in a public school); *Bennett v. Metro. Gov't of Nashville*, 383 F. Supp. 3d 790 (M.D. Tenn. 2019) (summary judgment; finding that simply asking the employee to not wear his Trump shirt to work, without more, was insufficient).

5

### 4)   *Defendants' "Speech in Response to Speech" Arguments are Inapt.*

6

7

8

9

Defendants also point to *Nunez* for the notion that "mere threats and harsh words are insufficient", arguing that "mere speech, in response to speech" cannot constitute a First Amendment violation.  *See* Mtn. at pp. 6-7 (quoting *Nunez*, 147 F.3d at 875).  This argument similarly fails here for several reasons.

10

11

12

13

First, this argument does not accurately portray the scope of plaintiff's allegations. Plaintiff is *not* simply alleging that "mere threats and harsh words" were directed to him; rather, as discussed in Part II, above, defendants' misconduct took on numerous forms over an extended period of time.

14

15

16

17

18

19

Second, as discussed above, *Nunez* was later narrowed by the holding in *Coszalter*, where the court indicated that even minor acts such as "bad mouthing" *can* support a claim unless those acts would not be reasonably expected to deter speech.  *Id.*, 320 F.3d at 976.  Here, the fact that Garrett told plaintiff she did not want him wearing the political hat "out there in the world"—even standing alone—was obviously and "reasonably likely to deter" plaintiff from exercising his constitutional right to free speech.

20

21

22

23

Third, as recognized by the Ninth Circuit, a claim may be based on "retaliatory speech" "when that speech is part of a campaign of harassment designed to burden the plaintiff's protected expression," *see Greisen v. Hanken*, 925 F.3d 1097, 1113-14 (9th Cir. 2019), which is also the case here.

24

25

Fourth, even when not part of a "campaign of harassment," the Ninth Circuit has found retaliatory speech *alone* to suffice when it "intimat[es] that some form of punishment" or

26

Page 12 – **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS Case No. 3:20-cv-05224-RBL**

1    discipline will follow, which is also present in this case.  *Id.*; *see also Coszalter*, 320 F.3d at 976

2    (listing "a threat of disciplinary action" to be sufficient to support claim); *see also* Complaint at

3    ¶¶ 38 & 48 (allegations of threats of discipline in this case).

4         *5)*     ***Alternatively, Plaintiff Requests Leave to Amend His Complaint.***

5         Plaintiff's Complaint is very detailed and goes well beyond the requirement of a "short

6    and plain statement of the claim" under Rule 8(a).  Defendants have adequate notice of the

7    claims asserted against them.  Regardless, if the court finds any deficiencies under Rule 12(c),

8    plaintiff seeks leave to replead to cure those deficiencies.

9    **E.     Plaintiff's §1985(3) and §1986 Claims Are Cognizable.**

10        On the Second and Third Claims for Relief, defendants raise exactly two arguments:

11        *1)*     ***These Statutes Protect Political- and Speech-Related Classes.***

12        First, defendants argue that plaintiff "has not alleged membership in a protected class"

13   under these two civil rights statutes.  *See* Mtn. at p. 9.  While it is true that a "protected class" has

14   not been specifically alleged, the body of the Complaint makes it clear that plaintiff asserts

15   discrimination and retaliation on the basis of his political speech and political beliefs, including

16   for being a supporter of President Trump and/or a Republican.  If not alleged clearly enough,

17   plaintiff requests the opportunity to re-plead to make the allegations on these claims more

18   explicit.  (For example, plaintiff could amend to add the allegation that he was a registered

19   Republican at the time of those encounters.)

20        The Supreme Court has *not* limited these civil rights statutes to "race" classes only.

21   *Griffith v. Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971) (holding that

22   the deprivation of civil rights must be motivated by "some racial, or perhaps *otherwise class-

23   based*, invidiously discriminatory animus") (italics added); *Canlis v. San Joaquin Sheriff's Posse

24   Comitatus,* 641 F.2d 711, 719 n.15 (9th Cir. 1981) (observing "No post-*Griffin* court has found

25   that § 1985(3) is limited exclusively to racial situations").

26   Page 13 – **PLAINTIFF'S OPPOSITION TO
     DEFENDANTS' MOTION TO DISMISS
     Case No. 3:20-cv-05224-RBL**

Indeed, several Circuit Courts have explicitly found that political support and party membership constitute a protected class under these statutes.[3] *See, e.g.*, *Keating v. Carey*, 706 F.2d 377, 387-88 (2d Cir. 1983) ("We hold that Keating's allegations that the defendants conspired against him because he was a Republican satisfies the *Griffin* requirement under §1985(3) of class-based discriminatory animus"); *Glasson v. Louisville*, 518 F.2d 899, 911-12 (6th Cir. 1975), *cert. denied*, 423 U.S. 930 (1975) (finding that "supporters of a political candidate" were a "clearly defined class[]" under §1985(3)).

The Ninth Circuit has not held to the contrary, and the same conclusion should be reached here.  Although the Ninth Circuit has generally looked to whether "the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection," *see Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (quotation omitted), this standard is *consistent* with the recognition of a class based on political speech, membership, and/or support.  *See, e.g.*, *Srail v. Vill. of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009) (holding that a denial of fundamental rights, such as freedom of speech, is like a suspect class and "must satisfy the strict scrutiny test to pass muster under the Equal Protection Clause"); *see also, e.g., Lane v. Franks*, 573 U.S. 228 (2014) (standing for proposition that, in passing 42 U.S.C. §1983, Congress protected the right of freedom of speech for public employees); 52 U.S.C. §10101(b) (prohibiting any interference with a citizen's right to vote); RCW 41.06.250(2) (protecting public employees so they "have the right to vote and to express their opinions on all

---

[3] In fact, the Second Circuit has commented that Congress, in passing §1985(3)—known as the "Ku Klux Klan Act"—was expressly acting to protect African-Americans *and* to protect "Republicans."  *Keating v. Carey*, 706 F.2d 377, 387 (2d Cir. 1983) (holding that Republicans were a protected class under §1985(3)); *see also id.* at 377-78 ("In our view, Congress did not seek to protect only Republicans, but to prohibit political discrimination in general…. Nothing in the many cases applying the statute to racial discrimination suggests that we should now turn history on its head and exclude from protection the group that seems to have been foremost on the minds of Congress").

Page 14 – **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS Case No. 3:20-cv-05224-RBL**

political subjects and candidates); RCW 42.17A.495(2) (prohibiting all employers from discriminating against employees for "in any way supporting or opposing a candidate, ballot proposition, political party, or political committee"). Plaintiff's claims thus fit within the statutes.

### 2)   *The "Intra-corporate Conspiracy" Doctrine Does Not Apply.*

Second, defendants argue that these claims are barred by the "intra-corporate conspiracy" doctrine. Defendants failed to indicate, however, that the Ninth Circuit has expressly declined to rule on this very issue, leaving it an open question of law. *Portman v. County of Santa Clara*, 995 F.2d 898, 910 (1993) ("This court has never directly addressed whether individual members of a single government entity can form a 'conspiracy' within the meaning of section 1985…We decline to resolve this conflict today…."); *see also David v. Baker*, 129 Fed. Appx. 358, 361 (9th Cir. 2005) ("The only outstanding issue is whether the intra-corporate conspiracy doctrine applies to Plaintiffs' §1985 claim. We decline to reach the issue and leave it to the district court to consider in the first instance.") Plaintiff is not aware of this issue being decided in this district.

In any event, as noted in *Portman*, there is a considerable split of authority on this issue among other circuits, *see id.* at 910 (collecting cases), but defendants here have offered *no* argument or reasoning as to why this court should choose to apply the doctrine.

Although defendants offered the *Donahoe* case from Arizona, defendants neglected to cite to the many other cases from Ninth Circuit district courts which have *rejected* the intra-corporate conspiracy doctrine, and these cases are better reasoned. Notably, the doctrine has been rejected in cases where the conspirators at issue engaged in a "series of actions" and "intended the results" of their conduct, as opposed to the situation where there was nothing more than "ministerial acts of several executives needed to carry out a single discretionary decision." *Wagner v. Cty. of Plumas*, No. 2:18-cv-03105, 2020 U.S. Dist. LEXIS 28449 at *17-19 (E.D. Cal. Feb. 19, 2020) (rejecting intra-corporate conspiracy doctrine on §1985 claim); *see also, e.g.,*

Page 15 – **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS Case No. 3:20-cv-05224-RBL**

1   *Webb v. Cnty. Of El Dorado*, No. 2:15-cv-01189, 2016 U.S. Dist. LEXIS 96931 at *22 (E.D.

2   Cal. July 25, 2016) (same); *Bey v. City of Oakland*, No. 14-cv-01626, 2015 U.S. Dist. LEXIS

3   167685 at *42-45 (N.D. Cal. Dec. 15, 2015) (same); *Rashdan v. Geissberger*, No. C-10-00634,

4   2011 U.S. Dist. LEXIS 4792 at *19-20 (N.D. Cal. Jan. 14, 2011) (same).

5           The allegations in the Complaint are in line with these cases.  Plaintiff has not brought a

6   conspiracy claim, for example, against several individual schoolboard members all because they

7   voted "yes" to a single decision.  Rather, plaintiff is alleging that Garrett, Gomes, and the District

8   engaged in a series of intentional actions designed to deprive plaintiff of his fundamental rights.

9   As such, plaintiff has sufficiently pled claims for relief under §1983(5) and §1986.

10  **F.     The Motion to Dismiss the Washington Constitution Claim Is Conceded.**

11          Absent changes to Washington law by the Washington Supreme Court, plaintiff concedes

12  defendants' motion as to his Fourth Claim for Relief ("Civil Rights; Washington State

13  Constitution") or alternatively agrees to voluntarily dismiss that claim.

14  **G.     Plaintiff Has Stated a Viable Claim under RCW 41.06.250.**

15          Plaintiff's Fifth Claim is based on a violation of RCW 41.06.250(2), in which the

16  Washington legislature expressly forbade public employers from interfering with its employees

17  from voting, from expressing their opinions on political subjects and candidates, from

18  participating in a political campaign, *etc.  Id.*  While it is true that no Washington case has found

19  RCW 41.06.250(2) to create an implied private right of action, it is also true that no Washington

20  court has rejected it.

21          Washington courts have long recognized that a statute can create an implied private right

22  of action.  *Bennett v. Hardy*, 113 Wn.2d 912, 919-21, 784 P.2d 1258 (1990) (implying cause of

23  action for age discrimination from state statute defining "unfair employment practices").  In the

24  absence of a controlling state court decision, federal courts may also find that such implied

25  private rights of action exist.  *Langley v. GEICO Ins. Co.*, 89 F. Supp. 3d 1083, 1089 (E.D.

26

1  Wash. 2015).

2  By way of example, in *Duffy v. Riveland*, 98 F.3d 447 (9th Cir. 1996), the Ninth Circuit

3  found that RCW 2.42.120—which guaranteed the appointment of a qualified interpreter to a

4  hearing-impaired person subjected to a judicial or quasi-judicial proceeding—created an implied

5  private right of action, despite the fact that the statute was "silent regarding a remedy for its

6  violation." *Id.* at 458.  The court found the three *Bennett* factors satisfied because: (1) plaintiff

7  fell within the class of persons governed by the statute (*i.e.*, a hearing-impaired person subjected

8  to a judicial or quasi-judicial proceeding); (2) evidence of legislative intent could be assumed

9  because "the legislature would not enact a statute granting rights to an identifiable class without

10  enabling members of that class to enforce those rights"; and (3) the right of action was consistent

11  with the legislative purpose because the statute contained a "clear mandate". *Id.* at 458-59.

12  The same conclusion should be reached for RCW 41.06.250(2).  First, the statute clearly

13  defines the class of individuals to which it applies—namely, public employees—and plaintiff

14  falls within that class.  Second, similar to *Duffy*, legislative intent can be presumed given that the

15  statute clearly grants rights to an identifiable class but does not provide any mechanism for those

16  individuals to enforce those rights, meaning that an implied private right of action is a suitable

17  and non-contradictory remedy for a violation of the statute.  Third, RCW 41.06.250(2) contains a

18  "clear mandate" against restrictions on political speech and activity by public employers, making

19  such a private right of action consistent with its text.

**H.**     **Plaintiff Asks That His Defamation Claim Be Dismissed Without Prejudice.**

20  Regarding plaintiff's Seventh Claim for Relief ("Defamation"), in light of the case

21  authority offered by defendants, plaintiff recognizes that his defamation claim is insufficiently

22  pled and would need to be repleaded with greater specificity.  In addition, although plaintiff has a

23  good faith belief that defendant Garrett made defamatory statements about him to third parties,

24  plaintiff was not involved in any of those communications and has not yet had the opportunity to

25

26  Page 17 – **PLAINTIFF'S OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**
**Case No. 3:20-cv-05224-RBL**

LINDSAY HART, LLP
1300 SW FIFTH AVENUE, SUITE 3400
PORTLAND, OREGON 97201-5640
PHONE: 503-226-7677 FAX: 503-226-7697

1   conduct discovery in this lawsuit.   As a result, plaintiff asks that his defamation claim be

2   dismissed without prejudice at this time and with leave to re-file.

3                                  **IV.    CONCLUSION**

4          Based on the foregoing, plaintiff asks that defendants' motion to dismiss be denied with

5   respect to his First, Second, Third, and Fifth Claims for Relief.

6          Plaintiff agrees that his Fourth and Seventh Claims for Relief may be dismissed, though

7   he respectfully asks that his Seventh Claim for Relief be dismissed without prejudice and with

8   leave to refile.

9          Dated this 26th day of May, 2020.

10

11                        LINDSAY HART, LLP

12                        By:    */s/ Michael Estok*
                                 Michael Estok, WSBA No. 36471
                                 1300 SW Fifth Avenue, Suite 3400
13                               Portland, OR 97201
                                 Telephone: 503-226-7677
14                               mestok@lindsayhart.com

15

16                        McKANNA BISHOP JOFFE, LLP

17                        By:    */s/ Noah Barish*
                                 Noah Barish, WSBA No. 52077
18                               1635 NW Johnson Street
                                 Portland, OR 97209
19                               Telephone: 503-821-0960
                                 nbarish@mbjlaw.com

20
                                 *Attorneys for Plaintiff Eric Dodge*
21

22

23

24

25

26   Page 18 – **PLAINTIFF'S OPPOSITION TO**
     **DEFENDANTS' MOTION TO DISMISS**
     **Case No. 3:20-cv-05224-RBL**