HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ERIC DODGE,

         Plaintiff,

  v.

EVERGREEN SCHOOL DISTRICT
NO. 114, a public corporation;
CAROLINE GARRETT, an individual;
and JANAE GOMES, an individual,

         Defendant.

CASE NO. 3:20-cv-05224-RBL

ORDER ON DEFENDANTS' MOTION
TO DISMISS UNDER RULE 12(B)(6)

## INTRODUCTION

THIS MATTER is before the Court on Defendants Evergreen School District No. 114, Caroline Garrett, and Janae Gomes' Motion to Dismiss for Failure to State a Claim. Dkt. # 19. Prior to suffering a stroke, Dodge worked as a teacher for the District. Upon returning to work, Dodge got into a verbal altercation with Garrett, his school's principal, over his "Make America Great Again" ("MAGA") hat. Dodge claims that this incident, and his subsequent difficulties lodging a complaint over it, caused his post-stroke symptoms to recur and forced him to once again take leave from his job.

1   Dodge asserts claims under 42 U.S.C. §§ 1983, 1985, and 1986, the Washington State

2   Constitution, and RCW 41.06.250. He also seeks to recover for defamation and outrage.

3   Defendants move to dismiss all but the outrage claim under Fed. R. Civ. P. 12(b)(6). For the

4   following reasons, the Court GRANTS Defendants' Motion in part and DENIES it in part.

**BACKGROUND**

6   According to his Complaint, Dodge was employed with the Evergreen School District

7   until October 2017, when he suffered a stroke. Dodge took a leave of absence and began rehab

8   and therapy to fully recover his strength, coordination, and verbal skills. He returned to work

9   part-time as a substitute teacher during the 2018/2019 school year.

10   By the 2019/2020 school year, Dodge was ready to start teaching full-time again, but his

11   former position was no longer available. The District assigned him to teach science at Wy'east

12   Middle School in Vancouver, WA, where Garrett is the principal. On August 22, 2019, Dodge

13   attended a teacher training event at Wy'east with no students present. While walking from his car

14   to the building, Dodge wore his MAGA hat. He took it off when he got inside the building. After

15   the training, Garrett approached Dodge to express her concerns about his MAGA hat. She

16   concluded by telling Dodge to "use his better judgment" with respect to the hat.

17   The next day, Dodge left his hat in his car when attending the morning training session at

18   Wy'east. However, at an off-site training session that afternoon, he wore the hat while walking to

19   and from his vehicle because Garrett was not present. Nonetheless, when Dodge returned to Wy-

20   east that same afternoon, Garrett approached Dodge and exclaimed: "OK, what is the fucking

21   deal with you and your hat!" Garrett then berated Dodge for 15 minutes, calling him a "racist,"

22   "bigot," "homophobe," "liar," and "hateful person." Garrett told Dodge to get union

23   representation because he "would need it" next time they spoke.

24

1    Dodge claims that Garrett's words were so upsetting to him that his post-stroke
2    symptoms recurred, bringing back his verbal stutter and inability to walk in a straight line.
3    Dodge was unable to teach because of these symptoms and remains on leave. After the incident,
4    Dodge filed a complaint with the District's HR department claiming that Garrett violated the
5    District's policies regarding civility, harassment, intimidation, and bullying. However, Dodge
6    claims that Gomes coordinated with Garrett to handle his complaint in a biased way.

7    First, Dodge alleges that Gomes threatened to disclose Dodge's personal medical
8    information in response to a public records request (filed by an unknown person) unless Dodge
9    dropped his complaint. Second, Gomes apparently demanded all of Dodge's medical records
10   without reasonable limitations before granting his leave request. Third, Gomes insisted on being
11   the sole person handling Dodge's benefits requests and placed a series of "roadblocks" before
12   Dodge's efforts to obtain benefits.

13   Dodge went forward with his complaint and was advised that an independent investigator
14   would look into his allegations. However, Gomes refused to supply Dodge with the
15   investigator's report and instead provided a written summary dismissing his complaint as
16   unsubstantiated on October 1, 2019. Gomes also told Dodge that the investigator's report showed
17   he had been the one making others uncomfortable at the training.

18   Dodge appealed the decision, but the District only provided the abridged version of the
19   report on November 8. Dodge unsuccessfully argued his appeal on November 14. The District
20   produced the investigator's full report on December 2. According to Dodge, Gomes omitted
21   information from the report showing that Garrett had a history of pushing her own political
22   views in the school and permitting others with similar views to do the same. The report also
23   found that Garrett had confronted Dodge solely because of his hat and had told him "she did not

24

1  want him wearing the hat anymore" as a representative of the school. Finally, the report did not
2  conclude that Dodge had violated any policies by wearing the hat and added that Dodge had
3  "reasonably perceived" Garrett's statements as a threat of discipline.

## DISCUSSION

5  Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable
6  legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri*
7  *v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege
8  facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662,
9  678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual
10 content that allows the court to draw the reasonable inference that the defendant is liable for the
11 misconduct alleged." *Id*. Although the court must accept as true the Complaint's well-pled facts,
12 conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper
13 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007);
14 *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The "[f]actual allegations
15 must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*,
16 550 U.S. 544, 555 (2007) (citations and footnotes omitted). On a 12(b)(6) motion, "a district
17 court should grant leave to amend even if no request to amend the pleading was made, unless it
18 determines that the pleading could not possibly be cured by the allegation of other facts." *Cook,*
19 *Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

20 **1.    Section 1983**

21 Defendants argue that Dodge's § 1983 claim—which asserts violations of the First, Fifth,
22 and Fourteenth Amendments—is properly construed under the First Amendment alone because
23 his allegation of a due process violation is duplicative. Further, Defendants contend that Dodge's

1  First Amendment claim fails because he does not allege that he suffered an adverse employment
2  action

3  **a.     *Duplicative Constitutional Provisions***

4  The Supreme Court has held that, "if a constitutional claim is covered by a specific
5  constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed
6  under the standard appropriate to that specific provision, not under the rubric of substantive due
7  process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). Plaintiffs cannot "double up"
8  constitutional claims. *Ramirez v. Butte-Silver Bow Cty.*, 298 F.3d 1022, 1029 (9th Cir. 2002).
9  Thus, if two § 1983 claims are based on different constitutional provisions but rely on "nearly
10 identical" allegations, courts often dismiss the less specific claim. *Diamond S.J. Enter., Inc. v.
11 City of San Jose*, 395 F. Supp. 3d 1202, 1232 (N.D. Cal. 2019) (dismissing due process but not
12 First Amendment claim); *see also Addison v. City of Baker City*, 258 F. Supp. 3d 1207, 1235 (D.
13 Or. 2017), *aff'd*, 758 F. App'x 582 (9th Cir. 2018) (dismissing due process claim where it was
14 "based on the same conduct as is [the] First Amendment retaliation claim."). However, not all
15 due process claims are duplicative. "[S]ubstantive due process claims might survive along with
16 First Amendment claims when . . . [they] involve different conduct or implicate a different
17 interest." *Addison*, 258 F. Supp. 3d at 1235 n.6 (citing *Schneider v. Cty. of Sacramento*, No. CIV.
18 S-12-2457 KJM, 2014 WL 4187364, at *5 (E.D. Cal. Aug. 21, 2014)).

19 Here, Dodge's § 1983 claim is vague and asserts that Defendants violated his rights
20 without explaining what conduct violated which right. If Dodge's due process claim merely
21 addresses Garrett's ridicule of his hat, there is little doubt that the First Amendment is the more
22 specific constitutional provision. But Dodge also makes vaguer allegations about blackmail and
23 interference with his ability to obtain benefits. If this conduct is the source of his due process
24

claim, there is a chance that it may be distinct from his First Amendment claim. The Court will thus allow Dodge an opportunity to amend his Complaint to explain exactly what conduct supports his different constitutional claims. This will allow the Court to better determine whether Dodge has alleged two separate constitutional violations or not.

**b.     *First Amendment***

To decide if a public-sector employer unconstitutionally retaliated against an employee for First Amendment activity, the Ninth Circuit considers:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Anthoine v. N. Cent. Ctys. Consortium*, 605 F.3d 740, 748 (9th Cir. 2010) (quoting *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir.2009)). The plaintiff must allege an adverse employment action that is "reasonably likely to deter [the plaintiff] from engaging in protected activity under the First Amendment." *Coszalter v. City of Salem*, 320 F.3d 968, 976 (9th Cir. 2003). "[A] government act of retaliation need not be severe and it need not be of a certain kind" to qualify. *Id*. at 975.

Although this standard is flexible, the employer's action cannot be "so insignificant that it does not deter the exercise of First Amendment rights." *Id*. For example, in *Nunez v. City of Los Angeles*, the court rejected a claim that the plaintiff had been "bad mouthed" by superiors, observing that "[i]t would be the height of irony, indeed, if mere speech, in response to speech, could constitute a First Amendment violation." 147 F.3d 867, 874-75 (9th Cir. 1998). But the Ninth Circuit has more recently recognized that retaliatory speech can be actionable if it is "part

of a campaign of harassment" or if it "intimat[es] that some form of punishment or adverse regulatory action would follow." *Greisen v. Hanken*, 925 F.3d 1097, 1113 (9th Cir. 2019). Threats do not need to be specific or explicit to constitute an adverse action. *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) (finding genuine issue of material fact where corrections officer warned inmate to be "careful" about what he wrote in grievances).

Here, Dodge's allegations are sufficient to assert an adverse employment action at the pleading stage. While Garrett's isolated tirade cannot constitute a "campaign of harassment," her alleged threat encouraging Dodge to seek union representation suggested future discipline if he continued wearing the MAGA hat. This was, admittedly, an isolated altercation, and Garrett did not take any formal steps to initiate discipline or repeat her threats later. However, Dodge's allegation of an adverse employment action satisfies the Ninth Circuit's minimum requirements. Defendants do not challenge Dodge's First Amendment claim on any other basis and it therefore survives dismissal.

**2.      Sections 1985 and 1986**

To state a claim under 42 U.S.C. § 1985(3), a plaintiff must "allege and prove four elements:"

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983).

In addition, a § 1985 violation requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). In other words, the plaintiff must be a member of a protected class. The

Ninth Circuit extends this protection "beyond race only when the class in question can show that there has been a governmental determination that its members 'require and warrant special federal assistance in protecting their civil rights.'" *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985). This means "the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection." *Id*. "The term 'class,' as used in the statute 'unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors.'" *Orin v. Barclay*, 272 F.3d 1207, 1217 (9th Cir. 2001) (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993)).

Some courts have held that membership in a political party or support for a political candidate or cause are enough to create a protected class. In *Keating v. Carey*, the Second Circuit concluded that § 1985 protects Republicans because the original intent of the Reconstruction-era statute was to protect the Ku Klux Klan's targets, a group that included Republicans who supported the rights of freed slaves. 706 F.2d 377, 387-88 (2d Cir. 1983); *see also Kimble v. D. J. McDuffy, Inc.*, 648 F.2d 340, 347 (5th Cir. 1981) (applying similar reasoning to hold that § 1985 protects classes "based on political beliefs or associations"). And in *Cameron v. Brock*, the Sixth Circuit held with little analysis that "supporters of a political candidate" warranted protection under the statute. 473 F.2d 608, 610 (6th Cir. 1973).

However, more recently, courts have been skeptical of expanding § 1985's protections to all political groups. The Third Circuit discussed the topic extensively in *Farber v. City of Paterson*, concluding first that support for a particular politician and his policies was too subjective and indeterminate to support a protected class. 440 F.3d 131, 138 (3rd Cir. 2006).

1  Further, the court rejected the reasoning in *Keating* and similar cases that Congress's intent to
2  protect Republicans from racially-motivated Klan violence by passing § 1985 evinced an intent
3  to protect *all* political groups from *all* forms of attack. *Id*. at 140-41. Instead, the court held that
4  opposition to a political candidate was too far removed from the "invidious" hatred of racism to
5  warrant protection. *Id*. at 142; *see also Grimes v. Smith*, 776 F.2d 1359, 1366 (7th Cir. 1985)
6  (holding that political conspiracies are outside the scope of § 1985); *United Bhd. of Carpenters*
7  *& Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 836 (1983) (expressing skepticism
8  that § 1985 extends to all political groups).

9        For similar reasons, this Court is unpersuaded that MAGA supporters are a protected
10  class for purposes of § 1985. Dodge identifies no congressional statutes or court decisions
11  extending federal protection to this group. The only cases he does identify as support are those
12  older circuit court cases holding that political groups qualify for protection under § 1985.

13        But there are multiple problems with this argument. First, Dodge's allegations indicate
14  that he was targeted for his affiliation with the MAGA movement, not the Republican Party; in
15  fact, Dodge alleges that he is not even a Republican and only started supporting Trump recently.
16  This makes his proposed class more mutable and ambiguous than party identity. Second, the
17  Court agrees with the Third Circuit that opposition to a political movement is too far afield from
18  Congress's original goal of fighting racism to fit within the statute's intent. Indeed, it would be a
19  bit ironic if an anti-racist statute could be used to protect against accusations of racism based on
20  political affiliation. Absent some binding authority, the Court will not take the novel step of
21  extending § 1985 protection in this manner. Dodge's § 1985 claim is dismissed with prejudice.
22  Because his § 1986 claim relies on the existence of a valid § 1985 claim, that claim is also
23  dismissed. *See Trerice v. Pedersen*, 769 F.2d 1398, 1403 (9th Cir. 1985).

24

### 3. Washington State Constitution

Dodge concedes that his claim under the Washington State Constitution cannot proceed; it is accordingly dismissed with prejudice.

### 4. RCW 41.06.250

RCW 41.06.250(2) provides that "[e]mployees of the state or any political subdivision thereof shall have the right to vote and to express their opinions on all political subjects and candidates and to hold any political party office or participate in the management of a partisan, political campaign. Nothing in this section shall prohibit an employee of the state or any political subdivision thereof from participating fully in campaigns relating to constitutional amendments, referendums, initiatives, and issues of a similar character, and for nonpartisan offices." However, RCW 41.06.250 does not explicitly create a private cause of action, and no court has recognized one since the law was enacted. Defendants argue that the Court should decline to create such a cause of action, while Dodge encourages the opposite outcome.

To determine if a statute creates an implied private cause of action, Washington courts consider: "first, whether the plaintiff is within the class for whose 'especial' benefit the statute was enacted; second, whether legislative intent, explicitly or implicitly, supports creating or denying a remedy; and third, whether implying a remedy is consistent with the underlying purpose of the legislation." *Bennett v. Hardy*, 113 Wash. 2d 912, 920-21 (1990). In the absence of a controlling state court decision, federal courts may also find that such implied private rights of action exist. *Langley v. GEICO Ins. Co.*, 89 F. Supp. 3d 1083, 1089 (E.D. Wash. 2015).

Dodge argues that finding an implied private cause of action is appropriate because RCW 41.06.250(2) was enacted to protect a class of public employees, of which he is one. Dodge further contends that legislative intent can be presumed because the statute protects an

identifiable class but provides no mechanism to cure a violation. Finally, Dodge asserts that the statute's clear purpose is to protect employees from political speech restrictions.

Defendants argue that RCW 41.06.250(2) protects the "general public," which makes a private cause of action inapplicable. *See Fisk v. City of Kirkland*, 164 Wash.2d 891, 895 (2008). They also assert that the intent of RCW 41.06.250(2) is to regulate the state's administration of its employees, not to give each employee a right to sue for damages. To support this, Defendants point to the purpose of Chapter 41.06, which is "to establish for the state a system of personnel administration based on merit principles and scientific methods governing the appointment, promotion, transfer, layoff, recruitment, retention, classification and pay plan, removal, discipline, training and career development, and welfare of its civil employees, and other incidents of state employment."

The Court agrees with Defendants. While RCW 41.06.250(2) does protect a class of public employees, it does so by providing a basis for invalidating regulations that violate its mandate. RCW 41.06.250(5) demonstrates this by stating: "The provisions of this section shall supersede all statutes, charter provisions, ordinances, resolutions, regulations, and requirements promulgated by the state or any subdivision thereof, including any provision of any county charter, insofar as they may be in conflict with the provisions of this section." This shows a legislative intent to ensure that state and local regulations abide by the statute's protections and is consistent with the overall purpose of the Chapter. Indeed, in *Bellevue Fire Fighters Local 1604, International Association of Fire Fighters, AFL-CIO, CLC v. City of Bellevue*, the Supreme Court of Washington applied RCW 41.06.250 to preempt a local regulation that limited participation in non-partisan elections but did not award money damages. 100 Wash. 2d 748, 756

1  (1984). In light of this, RCW 41.06.250(2) does not create an implied private cause of action and
2  Dodge cannot assert a claim under the statute.

3  **5.    Defamation**

4  In his Complaint, Dodge alleges that "defendant Garrett made false and defamatory
5  statements about plaintiff to other employees and agents of Evergreen, such as that plaintiff was
6  'racist,' 'bigoted,' or 'hateful' for wearing the MAGA hat." Defamation requires that a plaintiff
7  "demonstrate (1) falsity, (2) an unprivileged communication, (3) fault, and (4) damages. . . .
8  Proof of falsity requires that Plaintiff identify the precise statements alleged to be defamatory,
9  who made them and where." *Churyumov v. Amazon Corp. LLC*, No. C19-136RSM, 2019 WL
10 6271728, at *10 (W.D. Wash. Nov. 25, 2019). An actionable statement must be capable of being
11 proven true or false; opinions fall outside this category. *Lewis v. Time Inc.*, 710 F.2d 549, 555
12 (9th Cir. 1983).

13 Defendants argue not only that Dodge's allegations are insufficiently pled (which Dodge
14 concedes), but also that Garrett's alleged statements are nothing more than statements of opinion.
15 The Court agrees. Whether wearing a MAGA hat conveys racism or patriotism is a subjective
16 matter not open to conclusive proof one way or the other. Indeed, whether someone is racist,
17 bigoted, and hateful in general is not a factual question. *Forte v. Jones*, No. 1:11-CV-0718 AWI
18 BAM, 2013 WL 1164929, at *6 (E.D. Cal. Mar. 20, 2013) ("[T]he allegation that a person is a
19 'racist,' on the other hand is not actionable because the term 'racist' has no factually-verifiable
20 meaning."); *Stevens v. Tillman*, 855 F.2d 394, 402 (7th Cir. 1988) (holding that the terms "racist"
21 and "bigoted" have been "watered down by overuse" and are non-actionable unless they
22 "impl[y] the existence of undisclosed, defamatory facts"). Garrett's alleged accusations were

1 | based on Dodge's MAGA hat, but there is no dispute that he wore the hat. Consequently,

2 | Garrett's alleged statements could not support a defamation claim even if adequately pled.

3 | Dodge asks for leave to amend but provides no explanation of how he could cure this

4 | deficiency. Defendants argue that amendment would be futile, and the Court agrees. The entire

5 | basis of Dodge's defamation claim is flawed and allowing him to amend would essentially allow

6 | him to assert a whole new claim.

## CONCLUSION

8 | Defendants Motion is GRANTED in part and DENIED in part. Dodge's § 1985 claim,

9 | § 1986 claim, Washington State Constitution claim, RCW 41.06.250 claim, and defamation

10 | claim are DISMISSED with prejudice. Dodge shall have 30 days from the date of this Order to

11 | file an amended complaint that addresses the shortcomings with his § 1983 claim; if he fails to

12 | meet this deadline, his § 1983 due process claim shall be dismissed without further notice.

13 | As a final note, these are trying times and Dodge's allegations highlight the importance

14 | of courtesy between those who disagree politically. The Court urges the parties and anyone else

15 | reading this to be respectful in all things.

16 | IT IS SO ORDERED.

17 | Dated this 30th day of July, 2020.

Ronald B. Leighton
United States District Judge