HONORABLE RONALD B. LEIGHTON

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ERIC DODGE, an individual,<br><br>        Plaintiff,<br><br>    vs.<br><br>EVERGREEN SCHOOL DISTRICT NO. 114,<br>a public corporation; CAROLINE GARRETT,<br>an individual; and JANAE GOMES, an<br>individual,<br><br>        Defendants. | Case No. 3:20-cv-05224-RBL<br><br>**FIRST AMENDED COMPLAINT**<br><br>Jury Trial Requested |

Plaintiff Eric Dodge alleges as follows:

## **INTRODUCTION**

1.      As recognized by the Supreme Court of the United States: "Speech by citizens on matters of public concern lies at the heart of the First Amendment, which was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Lane v. Franks*, 573 U.S. 228, 235 (2014) (internal quotation omitted).

2.      This constitutional right to freedom of speech also protects individuals who are employed by governmental entities: "public employees *do not renounce their citizenship* when they accept employment, and this Court has cautioned time and again that public employers may not condition employment on the relinquishment of constitutional rights." *Id.* (italics added).

Page 1 – **FIRST AMENDED COMPLAINT**
02075464.DOCX

LINDSAY HART, LLP
1300 SW FIFTH AVENUE, SUITE 3400
PORTLAND, OREGON 97201-5640
PHONE: 503-226-7677 FAX: 503-226-7697

Thus, when not performing work in their official capacity, such employees remain private citizens and are free to have their own interests, beliefs, and opinions—including on matters of politics—without being punished for them by their public employers and supervisors.

3.   Plaintiff Eric Dodge was a long-standing and respected teacher employed by a public school district in Vancouver, Washington, who was returning to start new duties in a different middle school following an extended absence to rehabilitate from a stroke, from which he had finally recovered.

4.   On his second day back to work, and before students had even returned, Dodge was verbally attacked and defamed by his new principal for the political opinions he held as a private citizen—specifically, statements in support of President Trump—which caused not only emotional devastation to plaintiff but also a recurrence of the debilitating stroke symptoms from which he had previously recovered.  These emotional and physical injuries have caused plaintiff to be unable to continue his livelihood by working as a teacher.

5.   Seeking redress, plaintiff filed a complaint about the principal's discrimination and retaliation with the school district's human resources department, but the HR director worked closely with the principal behind the scenes to ensure that a predetermined outcome of "unsubstantiated" was achieved.  As part of these efforts, the HR director hired an outside investigator to look into plaintiff's complaint, but when that investigator returned numerous findings that were supportive of plaintiff and critical of the principal, the HR director refused to share any of this information with plaintiff.  Instead, the HR director wrote her own report to provide to plaintiff, in which she misstated and misrepresented the investigator's actual findings in order to close the investigation as unsubstantiated.

6.   Plaintiff then appealed HR's determination to the school district's elected board members, who declined to take any corrective action.  Notably, the school district refused to give plaintiff a copy of the investigator's full report until weeks after the appeal was already over.

Page 2 – **FIRST AMENDED COMPLAINT**
02075464.DOCX

LINDSAY HART, LLP
1300 SW FIFTH AVENUE, SUITE 3400
PORTLAND, OREGON 97201-5640
PHONE: 503-226-7677 FAX: 503-226-7697

7.      In engaging in such conduct, defendants have violated plaintiff's constitutional and other legal rights, causing substantial injury and damage to plaintiff, as set forth below:

## PARTIES

8.      Plaintiff Eric Dodge is a resident of Clark County, Washington.

9.      Defendant Evergreen School District No. 114 ("Evergreen" herein) is a public-school district and local government entity located in and doing business in Vancouver, Clark County, in the State of Washington.

10.     During all relevant times, defendant Caroline Garrett was employed as the Principal of Wy'East Middle School ("Wy'East" herein), one of Evergreen's schools in Vancouver.  Garrett is being sued in her individual capacity.

11.     During all relevant times, defendant Janae Gomes has been employed as the Chief Human Resources Officer for Evergreen.  Gomes is being sued in her individual capacity.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1367, and has personal jurisdiction over each defendant.

13.     All facts, events, and transactions giving rise to this lawsuit occurred within the geographic environs of the Western District of Washington; thus, venue is proper in this Court pursuant to 28 U.S.C. §1391.

14.     All facts, events, and transactions giving rise to this lawsuit occurred within Clark County; thus, assignment is proper in the Tacoma courthouse pursuant to LR 3(d)(1).

15.     Plaintiff provided 60 days advance written notice of all state law claims to Evergreen pursuant to RCW 4.96.020.

## FACTUAL ALLEGATIONS

16.     Plaintiff has been involved with Evergreen for most of his life, first as a student and then as an employee for over 17 years.

Page 3 – **FIRST AMENDED COMPLAINT**
02075464.DOCX

LINDSAY HART, LLP
1300 SW FIFTH AVENUE, SUITE 3400
PORTLAND, OREGON 97201-5640
PHONE: 503-226-7677 FAX: 503-226-7697

17.    Over these years, plaintiff developed a reputation for being an excellent teacher and coach, known for his genuine concern for the well-being of his students and for the respect and cooperation he has shown toward his colleagues.

18.    On October 23, 2017, while working at Evergreen's Mountain View High School, plaintiff unexpectedly suffered a stroke, which caused numerous symptoms including loss of strength, loss of coordination, and a verbal stutter.

19.    Plaintiff took a leave of absence for the remainder of the 2017/2018 schoolyear, focusing on extensive rehab and therapy in an effort to reach full recovery.

20.    During the 2018/2019 schoolyear, plaintiff continued with his rehab and returned to work at Evergreen on a part-time basis as a substitute teacher.  By the end of the schoolyear, plaintiff's stroke-related symptoms had essentially resolved, and he and his physician agreed he was ready to return to classroom work on a full-time basis.

21.    Because his former position at Mountain View High School was no longer open, Evergreen assigned plaintiff to teach Science at Wy'East for the 2019/2020 schoolyear.  Plaintiff was very happy about the prospect of returning to full-time duty as a teacher.

22.    Outside of work, plaintiff has had many activities and interests.  In addition to being a husband and father, plaintiff has enjoyed reading about and discussing the news and politics as an informed citizen.  He has particularly enjoyed friendly debate and open exchange of ideas among people with different backgrounds and perspectives.

23.    Plaintiff identifies himself as politically "independent" but leaning Republican. He did not vote for Donald Trump in 2016 out of concerns about Trump's character, but as time passed with Trump serving as President, plaintiff approved of the job he was doing and so began to be supportive of him.

24.    Early in the summer of 2019, plaintiff saw a red "Make America Great Again" hat ("MAGA hat" herein) for sale with an internal tag that said: "Made in China".  Plaintiff

Page 4 – **FIRST AMENDED COMPLAINT**
02075464.DOCX

LINDSAY HART, LLP
1300 SW FIFTH AVENUE, SUITE 3400
PORTLAND, OREGON 97201-5640
PHONE: 503-226-7677 FAX: 503-226-7697

1   purchased the hat both because he supported Trump but also because he found it ironic and
2   humorous that the hat had been made in China.

3          25.      During the summer holidays in 2019, plaintiff would at times wear the MAGA hat
4   while at gatherings or out in the public.  He liked to wear the hat as a conversation-starter, with
5   the idea of explaining that ordinary and normal people support Trump, despite some of Trump's
6   flaws (as symbolized by the "Made in China" tag in the hat).

7          26.      He would also wear the MAGA hat when he was going to be outside on a sunny
8   day to protect the sun spots on his head from developing skin cancer, as he had been cautioned to
9   do by his physician in the summer of 2019 after the sun spots had been bleeding.  At that time,
10  the MAGA hat was the only hat owned by plaintiff.

11         27.      Plaintiff's first day of work at Wy'East was on August 22, 2019, which was the
12  start of a week planned for teacher training and preparation, with no students present.

13         28.      It was a sunny day, and so plaintiff was wearing his MAGA hat while walking
14  from his vehicle to the entrance of Wy'East.  When he arrived at the front door, he doffed the
15  MAGA hat, and he did not subsequently wear or purposefully display it while inside Wy'East.

16         29.      After completion of a training session, plaintiff was approached in his classroom
17  by his new principal, defendant Garrett, with whom he had not previously worked.

18         30.      Unbeknownst to plaintiff at the time, Garrett had a prior history at Wy'East of
19  aggressively promoting political ideology and messages within the school, both in her official
20  and personal capacities, and in creating a fearful and hostile environment with certain staff
21  members, including creating a double standard for staff whose political views differed from her
22  own.

23         31.      During this first meeting, Garrett voiced her concerns about plaintiff's MAGA
24  hat.  Plaintiff assured Garrett that he was not trying to offend anyone with the hat.  Garrett
25  concluded by stating she wouldn't say he couldn't wear the hat, but that she would advise him to

26

LINDSAY HART, LLP
1300 SW FIFTH AVENUE, SUITE 3400
PORTLAND, OREGON 97201-5640
PHONE: 503-226-7677 FAX: 503-226-7697

1    "use his better judgment", which was a veiled way of stating he should not wear the hat.  Given

2    that plaintiff had never worn the MAGA hat inside of Wy'East, plaintiff reasonably understood

3    Garrett's concerns to be directed at the fact that he owned the hat at all and/or that he might wear

4    it on his personal time.

5          32.    The next morning, August 23, 2019, when plaintiff arrived at Wy'East for more

6    training and preparation, he left his MAGA hat in his car, not wanting to cause any friction with

7    Garrett and hoping to succeed at Wy'East.

8          33.    Around mid-day, plaintiff left Wy'East to attend a training session at a different

9    Evergreen location.  Given that Garrett was not present at that off-site location, plaintiff wore the

10   MAGA hat in that off-site parking lot while walking to and from his vehicle to the front door,

11   but plaintiff did not wear it or purposefully display it while inside the building.  When plaintiff

12   returned to Wy'East that same afternoon, plaintiff again left the MAGA hat in his car and did not

13   wear it or display it at or around Wy'East.

14         34.    At no other point did plaintiff wear or bring the MAGA hat with him while on

15   Evergreen properties.  Notably, in a subsequent investigation, Evergreen concluded that plaintiff

16   had never violated any Evergreen policy or rule in wearing the MAGA hat at any time.

17         35.    Back at Wy'East that same afternoon, Garrett approached and cornered plaintiff

18   with an aggressive and hostile tone.  She began the conversation by exclaiming: "OK, what is the

19   fucking deal with you and your hat!"

20         36.    Plaintiff was caught off-guard and by surprise, as the MAGA hat was in his car

21   and had not been in the building, and as her tone was dramatically different from the day before.

22         37.    For the next 15 minutes, Garrett—acting under color of state law, and acting as

23   plaintiff's new boss—repeatedly and aggressively berated plaintiff.  Among other things, she

24   declared that plaintiff was a "racist", "bigot", "homophobe", "liar", and "hateful person".

25

26   Page 6 – **FIRST AMENDED COMPLAINT**
     02075464.DOCX

LINDSAY HART, LLP
1300 SW FIFTH AVENUE, SUITE 3400
PORTLAND, OREGON 97201-5640
PHONE: 503-226-7677 FAX: 503-226-7697

Plaintiff felt threatened, insulted and bullied, simply because he owned a hat of which Garrett disapproved.

38.     Garrett concluded her verbal assault by telling plaintiff to get union representation because he "would need it" the next time they talked, thereby threatening discipline to plaintiff based solely on his political beliefs and speech.

39.     The effects of Garrett's attack were devastating to plaintiff.  In addition to causing severe emotional distress, humiliation, and fear, Garrett's attack caused plaintiff's post-stroke symptoms to recur, wiping out his progress from rehab and immediately bringing back his verbal stutter and an inability to walk in a straight line.

40.     As a result of these emotional and physical injuries, plaintiff has been unable to continue teaching for Evergreen and remains on an unpaid leave of absence from employment.

41.     Plaintiff filed an internal complaint with Evergreen's Human Resources department, including that Garrett violated Evergreen's policies mandating civility and prohibiting harassment, intimidation, and bullying.

42.     This HR complaint was managed by defendant Gomes, who along with Evergreen's Superintendent Mike Merlino handled the investigation in a biased and unfair manner intended to support and protect Garrett to the detriment of plaintiff.

43.     In fact, before plaintiff had even filed his complaint with HR, Gomes had already been communicating and working with Garrett to coordinate a response to the allegations and to ensure that plaintiff would not return to work at Wy'East.

44.     Upon information and belief, Gomes, Garrett, and Merlino also conceived a plan to try to prevent plaintiff's HR complaint from being investigated.  Specifically, before the HR investigation was completed, Gomes blackmailed plaintiff in an effort to get him to drop his complaint against Garrett.  Gomes told plaintiff that there had been a public records request filed related to his complaint (not filed by plaintiff) and threatened that if plaintiff did not immediately

LINDSAY HART, LLP
1300 SW FIFTH AVENUE, SUITE 3400
PORTLAND, OREGON 97201-5640
PHONE: 503-226-7677 FAX: 503-226-7697

drop his complaint, then she would be forced to turn over sensitive and private/personal information—including protected medical information—about plaintiff to the outside party who had made the records request.  Plaintiff rejected the blackmail and advised Gomes to follow applicable laws in responding to any public records requests, including by withholding or redacting any protected information.

45.     Gomes also used her position in other ways to try to harm plaintiff and end his employment.  For example, in responding to plaintiff's requests for leave, Gomes repeatedly demanded the entirety of plaintiff's medical records from both primary care providers and specialists without any reasonable limitation on the scope of those medical records.

46.     With regard to plaintiff's inquiries regarding benefits—which are typically handled by different HR staff members who manage benefits administration—Gomes prohibited any of those staff members from speaking with plaintiff; rather, Gomes insisted that she be the sole person to communicate with plaintiff going forward.  Gomes then placed a series of roadblocks in front of every effort by plaintiff to obtain various benefits to which he was entitled, causing further harm to plaintiff.

47.     Gomes advised plaintiff that Evergreen was hiring an "independent investigator" to look into the allegations. However, the "independent investigator" chosen by Gomes and Merlino was in fact Evergreen's own employment liability insurance program administrator—Clear Risk Solutions—and the investigation was conducted as part of the administrator's "pre-litigation program" designed to protect Evergreen's liability interests arising from HR complaints such as plaintiff's.  The investigation was conducted in a biased manner to support the predetermined conclusion that plaintiff's HR complaint was unsubstantiated.

48.     Unbeknownst to plaintiff at that time, Clear Risk Solutions had in the past five years conducted roughly 32 investigations on behalf of Evergreen and, out of those 32

Page 8 – **FIRST AMENDED COMPLAINT**
02075464.DOCX

LINDSAY HART, LLP
1300 SW FIFTH AVENUE, SUITE 3400
PORTLAND, OREGON 97201-5640
PHONE: 503-226-7677 FAX: 503-226-7697

investigations, Clear Risk Solutions had not once rendered a written conclusion that the individual being investigated had violated an Evergreen policy.

49.     When the investigation was completed, Gomes refused to share the investigator's report or findings to plaintiff.  Instead, on October 1, 2019, Gomes sent to plaintiff only her own written summary report of the investigator's findings, which concluded that "an act of discrimination, harassment, intimidation and bullying [by Garrett] *did not occur*" and therefore closed plaintiff's HR complaint as unsubstantiated.  (Italics added.)  Gomes's report went on to assert that, in fact, the "preponderance of the evidence" showed that *plaintiff* was the one who made others uncomfortable (even though no HR complaint had been made or investigated against plaintiff).

50.     Plaintiff subsequently met with Gomes and asked her again to share the investigator's reports and reconsider her decision, but Gomes rejected all of these requests.  As a result, on October 30, 2019, pursuant to Evergreen's policies, plaintiff appealed Gomes's decision to Evergreen's elected board of directors.  He also again requested copies of all relevant records, especially the actual records and reports from the "independent investigator".  That same day, Evergreen changed plaintiff's leave status from "paid" to "unpaid".

51.     In response, Evergreen scheduled the board's appeal hearing to occur on November 14, 2019—just two weeks out—but stonewalled the records request by providing multiple copies of records that were irrelevant or known to be already in plaintiff's possession, rather than any of the key records requested.

52     On November 14, 2019, plaintiff argued his appeal, but despite being informed about this misconduct by Garrett and Gomes, Evergreen's board refused to take any action to correct it.  Defendant Gomes drafted the letter to plaintiff notifying him of the board's decision.

53.     With regard to the investigator's documents, Evergreen inexplicably waited until November 8, 2019 (*i.e.*, just a few days before the hearing) to provide the investigator's 5-page

Page 9 – **FIRST AMENDED COMPLAINT**
02075464.DOCX

LINDSAY HART, LLP
1300 SW FIFTH AVENUE, SUITE 3400
PORTLAND, OREGON 97201-5640
PHONE: 503-226-7677 FAX: 503-226-7697

1
2
3

abridged report and until December 2, 2019 (*i.e.*, long after the hearing) to provide the investigator's full 18-page report, despite the fact that both reports were fully drafted and in Evergreen's possession by September 23, 2019.

4
5
6
7
8
9
10

54.     Moreover, these reports demonstrated that Gomes's summary report from October 1, 2019, had significantly misstated and distorted the actual findings made by the investigator. For example, Gomes's summary report omitted all references to the investigator's findings that were adverse to Garrett and/or Evergreen, such as Garrett's established and well-known history of pushing political statements and symbols in the school and permitting others holding similar political views as her to do so as well, thereby creating a "double standard" among the employees based on their personal political views.

11
12
13
14
15

55.     Gomes's report further omitted reference to the finding that Garrett had been motivated to confront plaintiff on August 23, 2019 simply because he wore the MAGA hat. According to the investigator, Garrett herself admitted she had told plaintiff that "she did not want him wearing the hat anymore", whether at Wy'East, or at other schools, or even just "out there in the world" as a representative of her school.

16
17
18
19

56.     In addition, the investigator's report made it clear that Gomes had falsely asserted that plaintiff had violated school district policies by a "preponderance of the evidence" by making others uncomfortable.  To the contrary, the investigator explicitly found that plaintiff had *not* violated any of Evergreen's policies, including by wearing the MAGA hat.

20
21
22

57.     The investigator further concluded that the plaintiff had "reasonably perceived" Garrett's statements to include "a threat of discipline" for wearing the hat, and that Garrett's conduct toward plaintiff "did have a negative substantial affect [sic] on Mr. Dodge."

23
24

58.     Defendants' actions and misconduct in response to plaintiff's HR complaint—as summarized in Paragraphs 41 to 57—further created a hostile workplace, caused additional

25
26

Page 10 – **FIRST AMENDED COMPLAINT**
02075464.DOCX

1 | damage and harm to plaintiff, and made it impossible for plaintiff to reasonably or safely return
2 | to any form of employment with the school district.

### FIRST CLAIM FOR RELIEF

**(First Amendment Retaliation; 42 U.S.C. §1983)**

**(Against All Defendants)**

59.     Plaintiff hereby incorporates the allegations in Paragraphs 1 through 58 as if fully set forth here.

60.     Defendants are each a "person" under 42 U.S.C. §1983.

61.     As set forth above, defendants violated plaintiff's constitutional right to freedom of speech under the First Amendment to the United States Constitution.

62.     The actions of defendants were willful, intentional, and in reckless disregard of plaintiff's constitutional rights.

63.     Plaintiff has consequently suffered injury, harm, and damages.

64.     Plaintiff's damages include economic damages, including but not limited to lost wages, lost benefits, loss of future earnings capacity and benefits, and medical expenses; noneconomic damages, including but not limited to mental anguish, distress, humiliation, anxiety, pain and suffering, loss to reputation, embarrassment, and fear; and punitive damages, in amounts to be proven at trial.

65.     Plaintiff is also entitled to prevailing plaintiff attorneys' fees and costs under 42 U.S.C. §1988 or as otherwise provided by law.

/ / /

/ / /

/ / /

/ / /

/ / /

Page 11 – **FIRST AMENDED COMPLAINT**
02075464.DOCX

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**SECOND CLAIM FOR RELIEF**

**(Due Process; 42 U.S.C. §1983)**

**(Against All Defendants)**

**(Stated in the Alternative to Plaintiff's First Claim for Relief)**

66.     Plaintiff hereby incorporates the allegations in Paragraphs 1 through 65 as if fully set forth here.

67.     Alternatively to the First Claim for Relief, if any of the defendants' actions and misconduct toward plaintiff as set forth in Paragraphs 41 through 58, above, are found to be unrelated to plaintiff's exercise of his constitutional right to freedom of speech under the First Amendment, then such actions and misconduct constituted violations of plaintiff's constitutional right to substantive due process under the Fourteenth Amendment to the United States Constitution.

68.     Plaintiff has consequently suffered injury and damages, as set forth above.

**THIRD CLAIM FOR RELIEF**

**(Outrage)**

**(Against All Defendants)**

69.     Plaintiff hereby incorporates the allegations in Paragraphs 1 through 68 as if fully set forth here.

70.     As set forth above, defendants engaged in extreme and outrageous conduct directed to plaintiff, which intentionally or recklessly inflicted emotional distress on plaintiff.

71.     Plaintiff has consequently suffered severe emotional distress and damages, as set forth above.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff Eric Dodge respectfully prays for judgment to be entered granting him relief as follows:

Page 12 – **FIRST AMENDED COMPLAINT**
02075464.DOCX

LINDSAY HART, LLP
1300 SW FIFTH AVENUE, SUITE 3400
PORTLAND, OREGON 97201-5640
PHONE: 503-226-7677 FAX: 503-226-7697

1    A.    Compensatory damages in an amount to be proven at trial;

2    B.    Punitive damages in an amount to be proven at trial;

3    C.    Prejudgment interest on any award of lost wages and lost benefits;

4    D.    Plaintiff's reasonable attorneys' fees and costs under 42 U.S.C. §1988 or as

5    otherwise provided by law;

6    E.    A declaration that defendants have committed the above violations of plaintiff's

7    civil rights; and

8    F.    Such other and further relief as the Court may allow.

9                    **<u>DEMAND FOR JURY TRIAL</u>**

10   Plaintiff hereby demands a jury trial on all questions so triable.

11

12   Dated this 27th day of August, 2020.

13

14                    LINDSAY HART, LLP

15                    By:    */s/ Michael Estok*
                             Michael Estok, WSBA No. 36471
16                           1300 SW Fifth Avenue, Suite 3400
                             Portland, OR 97201
17                           Telephone: 503-226-7677
                             mestok@lindsayhart.com

18

19                    McKANNA BISHOP JOFFE, LLP

20                    By:    */s/ Noah Barish*
                             Noah Barish, WSBA No. 52077
21                           1635 NW Johnson Street
                             Portland, OR 97209
22                           Telephone: 503-821-0960
                             nbarish@mbjlaw.com

23
                             *Attorneys for Plaintiff Eric Dodge*
24

25

26   Page 13 – **FIRST AMENDED COMPLAINT**
     02075464.DOCX

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 27, 2020 I served a copy of **FIRST AMENDED COMPLAINT** on the following person(s) in the manner indicated below at the following address(es):

Michael E. McFarland, #23000
Evans, Craven & Lackie, P.S.
818 W. Riverside Ave., Suite 250
Spokane, WA  99201
MMcFarland@ecl-law.com

Attorney for Defendants Evergreen
School District No. 114
and Janae Gomes

Francis S. Floyd, WSBA No. 10642
John A. Safarli, WSBA No. 44056
Floyd Pflueger & Ringer, P.S.
200 W. Thomas St., Ste 500
Seattle, WA  98119
ffloyd@floyd-ringer.com
jsafarli@floyd-ringer.com

Attorneys for Defendant Caroline Garrett

☒  by ECF
☐  by Facsimile Transmission
☐  by First Class Mail
☐  by Hand Delivery
☐  by Overnight Delivery

LINDSAY HART, LLP

By:  */s/ Michael J. Estok*
  Michael J. Estok, WSBA No. 36471
  Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**