HONORABLE JAMES L. ROBART

MICHAEL E. McFARLAND, JR., #23000
Evans, Craven & Lackie, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632
Attorneys for Defendants

IN UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ERIC DODGE,<br><br>       Plaintiff,<br><br>vs.<br><br>EVERGREEN SCHOOL DISTRICT NO. 114, a public corporation; CAROLINE GARRETT, an individual; and JANAE GOMES, an individual,<br><br>       Defendants. | Cause No. 3:20-cv-05224-RBL<br><br>DEEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>NOTE ON MOTION DOCKET: December 4, 2020 (without oral argument) |

COME NOW Defendants EVERGREEN PUBLIC SCHOOLS ("EPS") and JENAE GOMES, by and through their attorneys of record and hereby move the Court for an order on summary judgment dismissing Plaintiff Eric Dodge's claims with prejudice. This motion is based on the files and records herein, the Declaration of Michael E. McFarland, Jr., the accompanying exhibit and the below memorandum.

**I. INTRODUCTION/RELIEF REQUESTED**

On March 11, 2020, Mr. Dodge filed his original Complaint. *ECF 1*. He asserted a number of causes of action against EPS, Ms. Gomes and Caroline Garrett, all arising out of Mr. Dodge having worn a "Make America Great Again" (MAGA) hat to in-service trainings

EPS AND GOMES MOTION FOR S.J. - page 1

in August 2019. On May 1, 2020, the defendants jointly moved to dismiss all but one of Mr. Dodge's claims pursuant to FRCP 12(b)(6). *ECF 19*. On July 30, 2020, the Court dismissed Mr. Dodge's 42 U.S.C. § 1985 claim, § 1986 claim, Washington State Constitution claim, RCW 41.06.250 claim and defamation claim. *ECF 24*. In addition, the Court gave Mr. Dodge 30 days to file an amended complaint "that addresses the shortcomings with his § 1983 [due process] claim." *Id*. On August 27, 2020, Mr. Dodge filed an amended Complaint. *ECF 25*.

Mr. Dodge did not in fact remedy the "shortcomings" with his § 1983 due process claim, as he has failed to identify a life, liberty or property interest that was deprived of him by virtue of the allegedly "biased" investigation of his complaint against Ms. Garrett. As such, Mr. Dodge's due process claim must be dismissed.

Mr. Dodge's First Amendment claim must likewise be dismissed. To prove that claim, Mr. Dodge is required to show that his conduct was expressive, meaning that his conduct characterized (1) "an intent to convey a particularized message" and (2) a "great" "likelihood ... that the message would be understood by those who viewed it." *Texas v. Johnson*, 491 U.S. 397, 404, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989) (quoting *Spence*, 418 U.S. at 410–11, 94 S.Ct. 2727); *see also Vivid Entm't, LLC v. Fielding*, 774 F.3d 566, 579 (9th Cir. 2014). Mr. Dodge has testified unequivocally that he was not intending to convey any particularized message in wearing the MAGA hat, which is fatal to his First Amendment claim.

Mr. Dodge's outrage claim also fails as a matter of law, as he only complains that he was subjected to mere insults and indignations. Pursuant to well-settled law, the alleged conduct complained of is not enough to support a claim of outrage. Restatement (Second) of Torts § 46, comment d (1965); *Grimsby v. Samson*, 85 Wash.2d 52, 59, 530 P.2d 291 (1975).

## II. STATEMENT OF FACTS

Mr. Dodge was employed as a teacher with Evergreen Public Schools. *ECF 25, pg. 3, Par. 16*. Ms. Garrett was employed as the principal of Wy'East Middle School ("Wy'East"). *ECF 25, pg. 3, Par. 10*. On August 22, 2019, there was an in-service training session at Wy'East. *McFarland Declaration, Ex. A, 71:15-17*. Mr. Dodge wore a MAGA hat from the parking lot to the front door of Wy'East. *McFarland Declaration, Ex. A, 74:10-14*. When Mr. Dodge arrived at the front door of Wy'East, he took off his hat before walking into the building. *McFarland Declaration, Ex. A, 76:16-77:6*. While Mr. Dodge was in the training session, Ms. Garrett (Mr. Dodge's principal) sent Mr. Dodge an email asking if she could speak with him after the trainings. *McFarland Declaration, Ex. A, 96:2-21*. Sometime around 3:00 p.m. on August 22, 2019, Ms. Garrett arrived at Mr. Dodge's classroom. *McFarland Declaration, Ex. A, 89:1-7*. Ms. Garrett asked why Mr. Dodge wore the MAGA hat and Mr. Dodge responded that he had been told by his doctor to wear a hat because of his sun spots and that he only had one hat at the time. *McFarland Declaration, Ex. A, 98:1-19*. Ms. Garrett subsequently told Mr. Dodge that his hat was offensive, but ended the discussion by telling him that she would not tell him not to wear the hat, she simply advised him to use his better judgment. *McFarland Declaration, Ex. A, 98:20-99:8*.

On August 23, 2019, Mr. Dodge left his hat in his truck and did not wear it on his walk from his vehicle to Wy'East. *McFarland Declaration, Ex. A, 111:14-23*. After attending a short training session at Wy'East, Mr. Dodge attended another training session at Evergreen High School. *McFarland Declaration, Ex. A, 110:18-111:10.* Mr. Dodge wore his MAGA hat from the far end of the student parking lot to the building at Evergreen High School.

EPS AND GOMES MOTION FOR S.J. - page 3

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

*McFarland Declaration, Ex. A, 116:6-9*. When he got to the Evergreen High School building, he took off his hat and walked inside. *McFarland Declaration, Ex. A, 117:6-9*. Mr. Dodge carried his hat in his hand when he walked into Evergreen High School and set it next to him when he sat down. *McFarland Declaration, Ex. A, 120:15-20*.

Approximately half an hour after the training session at Evergreen High School ended, Mr. Garrett again spoke with Mr. Dodge. *McFarland Declaration, Ex. A, 133:1-5*. Ms. Garrett began the conversation by asking Mr. Dodge "What is the fucking deal with your – your hat?" *McFarland Declaration, Ex. A, 135:13-23*.[1] Mr. Dodge asked what Ms. Garrett meant, and Ms. Garrett told Mr. Dodge that she thought they had an agreement. *McFarland Declaration, Ex. A, 137:3-10*. Mr. Dodge responded that he did not know what she was talking about, and Ms. Garrett launched into an "attack" of Mr. Dodge, asking him if he knew what the hat made him and what it represents. *McFarland Declaration, 137:22-138:4*. Before Mr. Dodge could answer, Ms. Garrett called Mr. Dodge a "bigot," a "homophobe," a "hateful person," a "racist" and a "liar." *McFarland Declaration, Ex. A, 138:5-14*. Ms. Garrett concluded her "aggressive attack" by telling Mr. Dodge: "The next time I see you with that hat, you need to have your union rep. Bring your union rep because I'll have mine." *McFarland Declaration, Ex. A, 141:1-7*. Mr. Dodge claims that as a result of Ms. Garrett's "attack" his symptoms from a 2017 stroke recurred, necessitating a leave of absence from his job. *ECF 25, pg. 7, Pars. 39-40*.

---

[1] The description of the interaction comes solely from Mr. Dodge's own testimony, as the Court must assume all facts in the light most favorable to Mr. Dodge. Ms. Garrett will testify to a distinctly different version of the interaction.

EPS AND GOMES MOTION FOR S.J. - page 4

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

During Mr. Dodge's deposition on September 8, 2020 and September 17, 2020, he was questioned extensively regarding why he wore the MAGA hat to the two in-service days. Mr. Dodge testified that he wore the hat for two reasons: (1) it was the only hat he owned; and (2) he needed to protect his head from the sun per his doctor's instructions. Asked if he wore the hat for the purpose of expressing any message, Mr. Dodge unequivocally answered "no." Mr. Dodge's testimony in that regard is as follows.

Shortly before the August 2019 in-service trainings, Mr. Dodge had a skin cancer spot removed from his head. *McFarland Declaration, Ex. A, 74:15-20*. He was advised by his doctor to wear a hat and protect his head from the sun. *McFarland Declaration, Ex. A, 75:1-5*. As of August 22, 2019, Mr. Dodge only owned one hat. *ECF 25, pg. 5, Par. 26*. That is the reason Mr. Dodge wore the MAGA hat to the two in-service trainings:

> Q. Did you wear the hat from your truck to the Evergreen High School Building for any reason other than trying to protect your sunspots?
>
> A. Well, frankly, I hadn't even remembered or recalled our conversation that Ms. Garrett and I had. I wasn't thinking about it, because I – I wasn't at Wy'East.
>
> And so wearing the hat is – it's the same intention I have when I always wear it, which is to show people who I am and to cover the sunspots on my head.
>
> Q. Who were you hoping to show, quote/unquote, "who you are" on your walk from your vehicle into that – or to that Evergreen High School Building?
>
> A. Nobody.

*McFarland Declaration, Ex. A, 122:11-25*.

EPS AND GOMES MOTION FOR S.J. - page 5

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

Mr. Dodge testified that he did not wear his MAGA hat to express any kind of statement or any kind of point:

> Q. Did you carry the MAGA hat into that training in order to poke the proverbial bear?
>
> A. No.
>
> Q. Were you trying to make some kind of statement by carrying that hat into the meeting?
>
> A. No.
>
> Q. Were you trying to make some kind of point by carrying that hat into the meeting?
>
> A. No.

*McFarland Declaration, Ex. A, 81:12-20*.

Mr. Dodge further explicitly testified that he wore his MAGA hat for the purpose of covering his head on the way into the Evergreen High School training session:

> Q. When you made the decision to carry the hat into the Evergreen High School training session as opposed to putting it in your backpack, did you do so for the purpose of having people see your hat?
>
>   MR. ESTOK: Objection. It assumes facts.
>
>   Go ahead.
>
> A. No. I did so for the purpose of covering up my head on the way in.

*McFarland Declaration, Ex. A, 127:5-13*.

Mr. Dodge additionally testified that it would not have mattered if he was carrying a MAGA hat or some other hat (i.e., Portland Trail Blazers) that day:

EPS AND GOMES MOTION FOR S.J. - page 6

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

> Q. Okay. But as you walked into the auditorium and you were carrying your hat as opposed to putting it in your backpack, did you do that because people wanted to see that?
>
> MR ESTOK: Objection. Misstates testimony.
>
> A. No. I don't – I didn't think, hey, I should not put this in my backpack so people can see it. As a matter of fact, I don't put it in my backpack just on – you know, in general, it isn't a habit of mine because I'll crush it.
>
> So it wouldn't have mattered if it was that hat, or say I owned a Portland Trail Blazers hat, same thing; like, I would have carried it rather than stuff it in my backpack.

*McFarland Declaration, Ex. A, 127:14 – 128:3.*

Mr. Dodge wore his MAGA hat while walking from his vehicle to the entrance of Wy'East, took off his MAGA hat when he arrived at the building and "did not subsequently wear or purposefully display it while inside Wy'East." *ECF 25, pg. 5, Par. 28*. Mr. Dodge did not carry his MAGA hat as a way of expressing support for Donald Trump:

> Q. All right. But if I understand correctly, you – you didn't carry the back- -- or carry the hat into the Evergreen training session as a way to tell people that you support Donald Trump?
>
> A. No.

*McFarland Declaration, Ex. A, 123:24 – 124:3.*

Mr. Dodge also testified that he did not wear his MAGA hat to express his political views or ideology, to show his support for the Republican Party, for the purpose of trying to get people to vote Republican, or for the purpose of expressing any particular ideology:

> Q. Did you bring your hat into the meeting in an attempt to express your political views to the other participants of the meeting?
>
> A. No.

EPS AND GOMES MOTION FOR S.J. - page 7

> Q. Did you bring the hat into the meeting or carry the hat into the meeting in an attempt to show your colleagues your support for the Republican Party?
>
> A. No. Again, my – one of the reasons I haven't weared [sic] the hat is for my support. But that's not – not my purpose of bringing it into the meeting that day.
>
> Q. Did you bring or carry the hat for the purpose of trying to get people to vote Republican?
>
>    MR ESTOK: Object to the form of the question. Go ahead, if you can.
>
> A. No.
>
> Q. (BY MR. McFARLAND) Did you carry the hat into the meeting as some form of protest of someone else's political views?
>
> A. No.
>
> Q. Did you carry the hat into the meeting to express your political ideology?
>
> A. No.
>
> Q. Did you carry the hat in your hand into that training session to express any particular ideology?
>
> A. Again, the reason I carried the hat into that meeting is just because I had it with me. But there wasn't a purpose specifically for it.

*McFarland Declaration, Ex. A, 82:7 – 83:10.*

Mr. Dodge continued with his testimony that he did not carry his MAGA hat into the training session to protest anything, to cause other people to discuss his political views, or to send any message to his colleagues regarding his personal beliefs or opinions about anything:

EPS AND GOMES MOTION FOR S.J. - page 8

Q. Did you carry the hat in your hand into that training session to protest anything about Ms. Garrett or Wy'East?

A. No.

Q. Did you wear it or did you carry the hat into that meeting to protest or as a sign of protest of anything?

A. No.

Q. Did you carry the hat into the meeting in an effort to cause other people to discuss your political views with them?

A. No.

Q. Did you carry the hat into the meeting to send some type of message to your colleagues regarding your personal beliefs?

A. No.

Q. Did you carry the hat into that meeting as a way of expressing your personal opinions to your colleagues about anything?

A. No.

*McFarland Declaration, Ex. A, 83:17 – 84:11.*

### III. LAW/ANALYSIS

Summary judgment is appropriate when the moving party establishes that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). If the moving party demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-moving party to set out specific facts showing that a genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). A genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 8'9 F.2d 626, 630 (9th Cir. 1987).

EPS AND GOMES MOTION FOR S.J. - page 9

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted). The evidence presented by both the moving and nonmoving parties must be admissible. Fed.R.Civ.P. 56(c)(2). Evidence that may be relied upon at the summary judgment stage includes "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, [and] interrogatory answers." Fed.R.Civ.P. 56(c)(1)(A). The Court will not presume missing facts, and non-specific facts in affidavits are not sufficient to support or undermine a claim. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990). In evaluating a motion for summary judgment, the Court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**A.     Mr. Dodge's Due Process Claim Must Be Dismissed**.

In Defendant's Motion to Dismiss Pursuant to FRCP 12(B)(6), In the Court's Order on Defendant's Motion to Dismiss Under Rule 12(B)(6), EPS and Ms. Gomes argued that Mr. Dodge's due process claims were "duplicative" of his First Amendment claim. *ECF 19*. The Court gave Mr. Dodge the "opportunity to amend his Complaint to explain exactly what conduct violated which right." *ECF 24*. Mr. Dodge filed his First Amended Complaint on August 27, 2020, asserting ("in the alternative") that the investigation of his harassment, intimidation and bullying (HIB) complaint against Ms. Garrett was "biased," *ECF 25, Pars. 47-49*, thus denying him of his "substantive due process [rights] under the Fourteenth Amendment." *Id., at Par. 67*. Mr. Dodge's Fourteenth Amendment substantive due process

claim fails as a matter of law, as he cannot establish that he had a constitutionally protected right to have an internal HIB complaint handled in a non-biased manner.[2]

To succeed on a substantive due process claim, Mr. Dodge "must show as a threshold matter that a state actor deprived [him] of a constitutionally protected life, liberty or property interest." *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008). Not all property interests are protected by substantive due process. *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229, 106 S. Ct. 507, 88 L. Ed. 2d 523 (1985) (J. Powell, concurring). The interests protected by substantive due process are fewer than those protected by procedural due process. *Id.* This is because procedural due process protects property interests derived from state law, while substantive due process does not. *Ewing*, 474 U.S. at 229 (J. Powell, concurring). To invoke the protection of the due process clause, a plaintiff first must identify a protected interest to which such protection extends, and demonstrate a governmental deprivation of that interest. *See Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005) (explaining that the due process clause "protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake"); *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) (noting that a substantive due process claim requires that a plaintiff, "as a threshold matter, show a government deprivation of life, liberty, or property"); *see also Ingraham v. Wright*, 430 U.S. 651, 672, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977) (noting that due process —

---

[2] EPS and Ms. Gomes deny that the investigation was conducted in a "biased" manner, but for the purpose of this motion, the Court may assume that it was.

EPS AND GOMES MOTION FOR S.J. - page 11

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

whether procedural or substantive — "is required only when a decision of the State implicates an interest within the protection of the Fourteenth Amendment").

Here, Mr. Dodge cannot show that he has a constitutionally protected right to have his HIB complaint against Ms. Garrett investigated in any particular manner. *See, e.g., Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001) (there is no constitutional due process right to have child witnesses in a child sexual abuse investigation interviewed in a particular manner, or to have the investigation carried out in a particular way"). Mr. Dodge was not the subject of the HIB complaint and did not have accusations made against him. Rather, he is the one who brought the HIB complaint and had no constitutional right to have that complaint investigated or handled in any particular manner. His due process claim must therefore be dismissed.

**B.     Mr. Dodge's Conduct Does Not Implicate The First Amendment Because He Did Not Intend To Convey A Particularized Message By Wearing His MAGA Hat.**

"The First Amendment literally forbids the abridgment only of 'speech,' " but the United States Supreme Court has "long recognized that its protection does not end at the spoken or written word." *Texas v. Johnson*, 491 U.S. 397, 404, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). The Supreme Court refers to non-speech activity that is within the ambit of the First Amendment's protections as "expressive conduct." *See, e.g., Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). Conduct that is "sufficiently imbued with elements of communication" is protected by the First Amendment. *Johnson*, 491 U.S. at 404, 109 S.Ct. 2533 (quoting *Spence v. Washington*, 418 U.S. 405, 409, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974) (per curiam)), but the Court "has consistently rejected 'the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea.' " *Anderson v. City of*

*Hermosa Beach*, 621 F.3d 1051, 1058 (9th Cir. 2010) (quoting *United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968)).

"Because the Court has eschewed a rule that 'all conduct is presumptively expressive,' individuals claiming the protection of the First Amendment must carry the burden of demonstrating that their nonverbal conduct meets the applicable standard." *Knox v. Brnovich*, 907 F.3d 1167, 1181 (9th Cir. 2018) (quoting *Clark*, 468 U.S. at 293 n.5, 104 S.Ct. 3065).

Expressive conduct is characterized by two requirements: (1) "an intent to convey a particularized message" and (2) a "great" "likelihood ... that the message would be understood by those who viewed it." *Johnson*, 491 U.S. at 404, 109 S.Ct. 2533 (quoting *Spence*, 418 U.S. at 410–11, 94 S.Ct. 2727); *see also Vivid Entm't, LLC v. Fielding*, 774 F.3d 566, 579 (9th Cir. 2014). With respect to the first requirement—an intent to convey a particularized message—First Amendment protection is only granted to the act of wearing particular clothing or insignias where circumstances establish that an unmistakable communication is being made. *See, e.g., Nat'l Socialist Party of Am. v. Village of Skokie*, 432 U.S. 43, 97 S.Ct. 2205, 53 L.Ed.2d 96 (1977) (per curiam) (declining to enjoin Nazi marchers from wearing symbols of ideology in parade); *Cohen v. California*, 403 U.S. 15, 18, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971) (concluding that a person wearing a jacket bearing the inscription "F— the Draft" was entitled to First Amendment protections); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 505–06, 89 S.Ct. 733 (1969) (holding that students who wore black armbands to protest Vietnam War engaged in expressive conduct "'closely akin to pure speech[.]'").

Mr. Dodge repeatedly testified that he did not intend to express any message with his MAGA hat. He alleged in his Complaint that he would wear his MAGA hat when outside on a

EPS AND GOMES MOTION FOR S.J. - page 13

sunny day to protect sun spots on his head from developing skin cancer, and that August 22, 2019 (the first day Mr. Dodge wore his MAGA hat to Wy'East) was a sunny day. *ECF 25, pg. 5, Par. 26*; *ECF 25, pg. 5, Par. 28*. When asked if he wore the hat for the purpose of having people see it, Mr. Dodge denied the same, explaining that he wore the hat "for the purpose of covering up [his] head on the way in." *McFarland Declaration, Ex. A, 127:5-13*.

Aside from Mr. Dodge's clear testimony identifying the specific reason why he was wearing or carrying his MAGA hat (covering his sun spots), Mr. Dodge explicitly denied any other explanation for wearing his MAGA hat. Mr. Dodge testified that he was not wearing his MAGA hat as a way to tell people that he supported Donald Trump. *McFarland Declaration, Ex. A, 123:24-123:3*. He was not attempting to express his political views to the other participants of the meeting. *McFarland Declaration, Ex. A, 82:7-10*. He was not attempting to show his colleagues his support for the Republican Party. *McFarland Declaration, Ex. A, 82:11-17*. He did not wear the hat for the purpose of trying to get people to vote Republican. *McFarland Declaration, Ex. A, 82:18-23*. Nor was Mr. Dodge expressing his own political ideology. *McFarland Declaration, Ex. A, 83:3-5*. In fact Mr. Dodge was not expressing *any* particular ideology about anything. *McFarland Declaration, Ex. A, 83:6-10*. He likewise did not wear the hat to protest anything. *McFarland Declaration, Ex. A, 83:21-24*. Mr. Dodge simply did not wear the hat as a way of expressing his personal opinions to his colleagues about *anything*. *McFarland Declaration, Ex. A, 84:8-11*.

In his Complaint, Mr. Dodge alleged that he "did not wear [the hat] or purposefully display [the MAGA hat] while inside the building. *ECF 25, pg. 6, Par. 33*. He confirmed in his deposition that the only reason he did not put his MAGA hat inside his backpack upon

EPS AND GOMES MOTION FOR S.J. - page 14

entering the building was because he might have crushed it. *McFarland Declaration, Ex. A, 127:20-128:3*. Evidencing the lack of any intent to express any message, Mr. Dodge testified and that "it wouldn't have mattered if it was [the MAGA hat] or say I owned a Portland Trail Blazers hat, same thing; like I would have carried it rather than stuff it in my backpack." *Id*. Intent to convey a message is a requisite element of Mr. Dodge's First Amendment claim, which necessitates that he establish that he intended to convey a particularized message. *Thomas v. City of Beaverton*, 379 F.3d 802, 810 (9th Cir. 2004) (employee's conduct is expressive for purposes of a retaliatory discharge claim under the First Amendment when an intent to convey a particularized message is present). The First Amendment simply does not cover an employee's "general course of conduct" that lacks "an intent to convey a particularized message." *Dennison v. Cty. of Frederick*, 921 F.2d 50, 54 (4th Cir. 1990).

Here, Mr. Dodge's clear and unambiguous testimony defeats his First Amendment claim, Mr. Dodge was clear that he had no intention of conveying *any* message by wearing his MAGA hat. To the contrary, Mr. Dodge wore the MAGA hat because he wanted to cover up sun spots on his head and because the MAGA hat was the only hat he owned. There was no message being conveyed by the hat and since he was only wearing the hat to protect the sun spots, it could have been any hat. *McFarland Declaration, Ex. A, 127:20-128:3*; *McFarland Declaration, Ex. A, 127:5-13*. Pursuant to Mr. Dodge's own testimony, he did not intend to convey any particularized message by wearing his MAGA hat. That is fatal to Mr. Dodge's First Amendment claim. *Edge v. City of Everett*, 929 F.3d 657, 668 (9th Cir. 2019) (expressive conduct requires "an intent to convey a particularized message").

EPS AND GOMES MOTION FOR S.J. - page 15

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

In order for Mr. Dodge to successfully establish that he was retaliated against in violation of his First Amendment right to freedom of speech, he must first establish that he or she engaged in constitutionally protected speech. *See, Aldous v. City of Galena, Illinois*, 702 F. App'x 439, 441 (7th Cir. 2017). *Mulligan v. Nichols*, 835 F.3d 983, 988 (9th Cir. 2016) (to establish a First Amendment retaliation claim, a plaintiff must show that his or her speech or act was constitutionally protected). Whether conduct is expressive is determined by whether the actor had an intent to convey a particularized message in his conduct. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1270 (11th Cir. 2004). Expressive conduct exists only where an intent to convey a particularized message and "the putative speaker bears the burden of proving that his or her conduct is expressive." *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 161 (3d Cir. 2002) (citations and quotation marks omitted). Mr. Dodge cannot prove that his conduct of wearing the MAGA hat was expressive, as he specifically denied having the requisite intent to convey any particular message.

**C.    Mr. Dodge's Outrage Claim Fails Because The Conduct Complained Of Was Not Outrageous And Extreme.**

Mr. Dodge claims that EPS and Ms. Gomes engaged in extreme and outrageous conduct directed at him, which intentionally or recklessly inflicted emotional distress on Mr. Dodge. *ECF 25, pg. 12, Par. 70*. "To establish a claim for the tort of outrage—also known as intentional infliction of emotional distress—the plaintiff must show that (1) he or she suffered severe emotional distress; (2) the emotional distress was inflicted intentionally or recklessly, but not negligently; (3) the conduct complained of was outrageous and extreme; and (4) he or she personally was the subject of the outrageous conduct*." Grange Ins. Ass'n v. Roberts*, 179 Wn. App. 739, 753–54, 320 P.3d 77 (2013), *review denied*, 180 Wn. 2d 1026 (2014). "[I]t is

not enough that a defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Birklid v. Boeing Co.,* 127 Wn. 2d 853, 868, 904 P.2d 278 (1995) (quoting *Grimsby v. Samson*, 85 Wn. 2d 52, 59, 530 P.2d 291 (1975)). Instead, the conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Grange*, 179 Wn. App. at 754. "The question of whether certain conduct is sufficiently outrageous is ordinarily for the jury, but it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." *Dicomes v. State*, 113 Wn. 2d 612, 630, 782 P.2d 1002 (1989).

Outrage is a tort reserved for the most egregious instances of wrongdoing. *See, e.g., Kloepfel v. Bokor*, 149 Wn. 2d 192, 194-95, 66 P.3d 630 (2003) (elements of outrage met when defendant, who was under a no-contact order, threatened to kill his ex-girlfriend, threatened to kill her boyfriend, watched her home, called her home 640 times, called her work 100 times and called the homes of her male friends numerous times). Mere insults and indignities, such as causing embarrassment or humiliation, will not support imposition of liability on a claim of outrage. Restatement (Second) of Torts § 46, comment d (1965); *Grimsby v. Samson*, 85 Wash.2d 52, 59, 530 P.2d 291 (1975).

The conduct that Mr. Dodge alleges gives rise to an actionable outrage claim clearly falls into the category of mere insults and indignities. Mr. Dodge alleges that Ms. Garrett "approached and cornered him with an aggressive and hostile tone," asked him "OK, what is

EPS AND GOMES MOTION FOR S.J. - page 17

the fucking deal with you and your hat," and allegedly "berated" him, causing him to feel "threatened, insulted and bullied." *ECF 25, pg. 6, Par. 35; ECF 25, pg. 6, Par. 37*. Ms. Garrett's alleged conduct is not sufficiently outrageous to support the imposition of liability on a claim of outrage because Mr. Dodge only complains that she insulted him. Pursuant to well-recognized Washington law, Ms. Garrett's alleged conduct does not come close to the level of extreme and outrageous conduct necessary to sustain an outrage claim. Similarly, Mr. Dodge alleges that Ms. Gomes engaged in a "bias" investigation designed to deny his HIB complaint against Ms. Garrett. That alleged conduct simply does not rise to the level sufficient to establish an outrage claim. As such, Mr. Dodge's outrage claim must be dismissed.

## IV. CONCLUSION

Mr. Dodge's due process claim is based upon his assertion that the HIB complaint he made against Ms. Garrett was handled in a biased and unfair manner. That claim fails as a matter of law, as Mr. Dodge had no constitutionally protected right to have his complaint investigated in any particular manner.

Mr. Dodge's First Amendment claim fails as a matter of law because he was not engaged in "expressive conduct." Mr. Dodge testified unequivocally that he wore the MAGA hat because he wanted to cover up his sun spots and the MAGA hat was the only hat he owned. Mr. Dodge further testified that he had no intention of conveying any particular message by wearing the hat. Since Mr. Dodge's First Amendment claim requires an intent to convey a message, and since Mr. Dodge denied having any such intent, his First Amendment claim fails as a matter of law.

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

Mr. Dodge's outrage claim fails as a matter of law because the conduct complained of simply does not rise to the level of being so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Reasonable minds cannot differ on this issue.

Based upon the foregoing, EPS and Ms. Gomes respectfully request that the Court grant their motion and dismiss Mr. Dodge's claims with prejudice.

DATED this 2nd day of November, 2020.

EVANS, CRAVEN & LACKIE, P.S.


By: _____s/ Michael E. McFarland, Jr._____
MICHAEL E. McFARLAND, JR., #23000
Attorneys for Evergreen SD Defendants

# CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

**COUNSEL FOR PLAINTIFF**
Michael John Estok
Email:        mestok@lindsayhart.com
Email:        cweeks@lindsayhart.com
Email:        lnorris@lindsayhart.com
Email:        mjones@lindsayhart.com

**CO-COUNSEL FOR PLAINTIFF**
Noah Barish
Email:        nbarish@mbjlaw.com

**COUNSEL FOR CAROLINE GARRETT**
Francis Floyd
John Safarli
Email:        ffloyd@floyd-ringer.com
Email:        jsafarli@floyd-ringer.com
Email:        sscott@floyd-ringer.com
Email:        skatinas@floyd-ringer.com

      s/     Michael E. McFarland, Jr.
     MICHAEL E. McFARLAND, #23000
     Attorney for Defendants
     Evans, Craven & Lackie, P.S.
     818 W. Riverside Ave., Suite 250
     Spokane, Washington  99201
     (509) 455-5200
     (509) 455-3632 Facsimile
     MMcFarland@ecl-law.com