UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ERIC DODGE,<br><br>                          Plaintiff,<br><br>     v.<br><br>JANAE GOMES, et al.,<br><br>                          Defendants. | CASE NO. C20-5224JLR<br><br>ORDER DENYING MOTION TO COMPEL |

## I.   INTRODUCTION

Before the court is Plaintiff Eric Dodge's motion to compel Defendants Evergreen School District No. 114 ("Evergreen") and Jenae Gomes (together, "Defendants"), to produce documents. (*See* Mot. (Dkt. # 28); *see also* Reply (Dkt. # 34).)  Defendants oppose the motion. (*See* Resp. (Dkt. # 30).)  At the court's request, Defendants provided unredacted copies of the documents that Mr. Dodge seeks to compel Defendants to produce to the court for *in camera* review. (11/12/20 Min. Order (Dkt. # 38).)  The court has reviewed the motion, the parties' submissions in support of and in opposition to the

ORDER - 1

1  motion, the documents at issue, the relevant portions of the record, and the applicable
2  law.  Being fully advised, the court DENIES the motion to compel.

## II.   BACKGROUND AND ANALYSIS

Mr. Dodge was a science teacher at Wy'East Middle School ("Wy'East"), which is one of Evergreen's schools in Vancouver, Washington.  (Am. Compl. (Dkt. # 25) ¶¶ 9, 21.)  Mr. Dodge alleges that the Wy'East principal, Defendant Caroline Garrett, harassed and discriminated against him in violation of his First Amendment rights because he wore a "Make America Great Again" ("MAGA") hat to Wy'East.  (*See id.* ¶¶ 27-38.)  After the alleged incident, Mr. Dodge filed a complaint about Ms. Garrett's behavior, which Evergreen referred to a third-party risk assessor, Clear Risk Solutions ("CRS"), for investigation.  According to Defendants, "CRS is the third-party administrator of the risk pool Schools Insurance Association of Washington ('SIAW') of which [Evergreen] is a member."  (Homer Decl. (Dkt. # 32) ¶ 2.)  In that role, CRS provides SIAW's pool members—like Evergreen—with "administrative services, risk management, underwriting, and insurance procurement."  (*Id.*)

The discovery dispute at issue relates to CRS's investigation into Mr. Dodge's complaint.  Mr. Dodge seeks to compel Defendants to produce unredacted copies of three emails sent between Ms. Gomes; two CRS employees; and CRS's outside counsel, Jennifer Homer, regarding CRS's investigation.  (*See* Mot. at 2-5.)  Defendants have redacted the emails at issue and argue that the documents are protected by the attorney client privilege.  (*See* Resp. at 4-10.)

//

1    Federal common law governs privilege in a federal suit not based on diversity
2    jurisdiction. Fed. R. Evid. 501; *United States v. Zolin,* 491 U.S. 554, 562 (1989); *Clarke*
3    *v. American Commerce Nat. Bank,* 974 F.2d 127, 129 (9th Cir. 1992) ("Issues concerning
4    application of the attorney-client privilege in the adjudication of federal law are governed
5    by federal common law."). The burden of proving that the privilege applies lies with the
6    party asserting the privilege. *Weil v. Investment/Indicators Research & Mgmt.*, 647 F.2d
7    18, 25 (9th Cir. 1981). Under the standard followed in the Ninth Circuit:

> The attorney-client privilege exists where: (1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citations and quotations omitted).

The court agrees with Defendants that the emails at issue are privileged. First, the court is persuaded that Ms. Homer's role as contract counsel for CRS created an attorney-client relationship with Evergreen—CRS's client. (*See* Homer Decl. ¶¶ 5-10.) In fact, CRS hires Ms. Homer specifically to provide legal advice to SIAW pool members like Evergreen. (*See id.* ¶¶ 6-7.)

Second, the emails at issue involve privileged legal advice.[1] (*See id.* ¶¶ 12-16.) Specifically, Ms. Gomes's September 19, 2019 email to Andrea Callaghan included a request for legal advice that Ms. Callaghan forwarded to Ms. Homer on September 20,

---

[1] To protect Defendants' privilege, the court will keep its discussion of the content of the emails vague.

1  2019.  Ms. Homer then responded and provided privileged legal advice to Ms. Gomes
2  that same day.  Finally, Ms. Gomes wrote back to Ms. Homer and continued to discuss
3  the legal issues raised in Ms. Gomes's initial email and Ms. Homer's response.

4  Third, Ms. Callaghan does not destroy the privilege.  Although Ms. Callaghan is
5  an administrative assistant and not an attorney, she "serves as [the] communication
6  conduit between SIAW members and [Ms. Homer]" when SIAW members need advice
7  on legal issues.  (Homer Decl. ¶ 5.)  Thus, the fact that Ms. Gomes emailed her request
8  for advice to Ms. Callaghan instead of Ms. Homer directly does not destroy the privilege.
9  *See Karnoski v. Trump*, No. C17-1297MJP, 2020 WL 2405442, at *5 (W.D. Wash. May
10 12, 2020) (concluding that the presence of a contract legal assistant on email chains did
11 not destroy the attorney-client privilege).

12 Fourth, the substance of the emails involves legal advice, not business advice.  The
13 parties appear to agree that CRS's investigation into Mr. Dodge's complaint is primarily
14 a business function, not a legal one.  (*See* Mot. at 7-10: Resp. at 8.)  But Ms. Homer's
15 role in the investigation was to provide legal advice (Homer Decl. ¶¶ 8-10), and the
16 communications at issue involve legal advice.

17 Finally, the court finds no evidence that Evergreen or Ms. Gomes waived the
18 privilege.  Mr. Dodge is correct, of course, that "[v]oluntary disclosure of privileged
19 communications constitutes waiver of the privilege for all other communications on the
20 same subject." (Mot. at 10 (citing *Richey*, 632 F.3d at 566).)  However, Mr. Dodge failed
21 to identify any privileged communications that Defendants have disclosed in this
22 litigation. (*See* Mot. at 10-11.)  The court understands that Defendants have produced a

1  number of non-privileged documents related to CRS's investigation.  (Resp. at 9-10.)

2  But disclosure of non-privileged documents does not result in waiver.  Thus, Mr. Dodge's

3  waiver argument fails.

### III.   CONCLUSION

For the reasons set forth above, Mr. Dodge's motion to compel (Dkt. # 28) is DENIED.

Dated this 23rd day of November, 2020.

*[signature]*

JAMES L. ROBART
United States District Judge